1  Robert D. Phillips, Jr. (SBN 82639)
   rphillips@reedsmith.com
2  Miles M. Cooley (SBN 206783)
   mcooley@reedsmith.com
3  REED SMITH LLP
   355 South Grand Avenue, Suite 2900
4  Los Angeles, CA  90071-1514

5  Telephone:  213.457.8000
   Facsimile:   213.457.8080
6
7  Attorneys for Plaintiff
   North American Company For Life and
   Health Insurance
8
                  UNITED STATES DISTRICT COURT
9
                SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  NORTH AMERICAN COMPANY FOR<br>LIFE AND HEALTH INSURANCE, | No.: 08 CV 0270 BEN NLS |
| 12                    Plaintiff, | **PLAINTIFF NORTH AMERICAN** |
| 13         vs. | **COMPANY FOR LIFE AND**<br>**HEALTH INSURANCE'S** |
| 14  MICHAEL L. PHILPOT, an individual, | **OPPOSITION TO FRCP 12(b)(6)** |
|     VIRGINIA B. HIRSH, an individual,<br>15  JOHN B. KUYKENDALL, an individual, | **MOTION TO DISMISS OF**<br>**DEFENDANTS HIRSH AND** |
|     RENE ALEJANDRO LACAPE, an<br>16  individual , C. RICHIE MCNAMEE, an | **LACAPE** |
|     individual and HECTOR PAEZ VALDEZ,<br>17  an individual, | **Hearing Date: May 5, 2008** |
|                      Defendants. | **Time: 10:30 a.m.**<br>**Courtroom: 3** |

18
19
20
21
22
23
24
25
26
27
28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................... 1

II.  LEGAL ARGUMENT.............................................................................. 3

  A.  Standard Governing Motions To Dismiss ............................................ 3

  B.  Proposition 103 And California Insurance Code 750(d) Do Not Provide Grounds For Dismissal Of North American's Claims Against Defendants.............................................................................. 4

   1.  Defendants' Reliance On Insurance Code Section 750(d) Is Without Merit Because The Statute Does Not Apply To Life Insurance.................................................................... 4

   2.  Even Assuming, *Arguendo*, Proposition 103 Did Apply To Life Insurance, It Is Not Intended To Apply To Defendants' Illegal Conduct. ......................................... 5

   3.  Parties Have The Right To Contract And Agree To Terms Limiting Rebating, Regardless Of Whether Insurance Code Section 750(d) Permits Rebating (And It Does Not) ......................................................................... 6

  C.  Defendants' Attempts To Distract The Court By Reframing North American's Allegations Fail: The Complaint Alleges Viable Claims Against Defendants For Inducing North American To Pay Them Upfront Commissions Through Their Illegal Commission Scheme................................................................. 7

   1.  North American's Complaint Properly Alleges That The Sham Policies Were Applied For By Individuals Complicit In The Illegal Commission Scheme Solely To Facilitate The Payment Of Commissions To Defendants, Without Any Good Faith Intent To Maintain Such Policies ............................................................................ 7

   2.  The Complaint Alleges A Valid Breach Of Contract Claim Against Defendants ................................................. 11

   3.  North American Clearly Did Not Receive "Exactly What It Bargained For" On The Sham Policies, As It Lost Tens Of Millions Of Dollars Due To Defendants' Illegal Commission Scheme.................................................... 12

  D.  The Primary Or Exclusive Jurisdiction Doctrine Invoked By Defendants Is Also Inapplicable.......................................................... 13

  E.  Defendants' Assertion That Nothing They Did Was Illegal Is Belied By Their Assertion Of The Fifth Amendment As A Defense......................................................................................... 15

III.  CONCLUSION ...................................................................................... 16

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

i

# TABLE OF AUTHORITIES

Page

**CASES**

*Allstate Insurance Co. v. State Board of Equalization,*
169 Cal. App. 2d 165 (1959)..................................................................16

*Balistreri v. Pacifica Police Department,*
901 F.2d 696 (9th Cir. 1990)..................................................................4

*Calfarm Insurance Co. v. Deukmejian,*
48 Cal. 3d 805 (1989) ........................................................................4, 5

*Conley v. Gibson,*
355 U.S. 41 (1957)................................................................................3

*De La Cruz v. Tormey,*
582 F.2d 45 (9th Cir. 1978)..................................................................3

*Gilligan v. Jamco Develop. Corp.,*
108 F.3d 246 (9th Cir. 1997)................................................................3

*Graehling v. Village of Lombard, Ill.,*
58 F.3d 295 (7th Cir. 1995)..................................................................3

*Krumme v. Mercury Insurance Company,*
123 Cal. App. 4th 924 (2004).........................................................13, 14

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,*
507 U.S. 163 (1993)..............................................................................3

*Manufacturers Life Insurance Co. v. Superior Court (Weil Insurance Agency),*
10 Cal. 4th 257 (1995) .......................................................................4-5

*P.W. Stephens, Inc. v. State Compensation Insurance Fund,*
21 Cal. App. 4th 1833 (1994)..........................................................13, 14

*Pareto v. F.D.I.C.,*
139 F.3d 696 (9th Cir. 1998)................................................................3

*SEC v. Cross Fin'l Services, Inc.,*
908 F. Supp. 718 (C.D. Cal. 1995)......................................................3

*United States v. Redwood City,*
640 F.2d 963 (9th Cir. 1981)................................................................3

*United States v. White,*
893 F. Supp. 1423 (C.D. Cal. 1995)....................................................3

STATUTES, RULES AND REGULATIONS

Cal. Code Regs., title 10, § 2350...........................................................14

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Cal. Insurance Code §750(d)................................................................... 4, 5, 6, 7, 15

Cal. Insurance Code §1861.13 ..................................................................5

Cal. Insurance Code §10509.9 .................................................................15

Fed. Rule of Civil Procedure 12(b)(6)..........................................................3


MISCELLANEOUS

Harvey Rosenfeld, *Auto Insurance: Crisis and Reform*,
    29 U. Mem. L. Rev. 69, 100 (1998). ..........................................................5

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

NORTH AMERICAN'S OPPOSITION TO MOTION TO DISMISS

# I.    **INTRODUCTION**

Far from being "so bizarre as to defy rational analysis" as defendants Virginia Hirsh and Rene Lacape (collectively "Defendants") vainly try to spin it in their Motion to Dismiss, North American Company for Life and Health Insurance's ("North American") Complaint, on its face, alleges cognizable claims for relief under California and federal law relating to the illegal scheme hatched by Defendants and their defendant cohorts in the Michael Philpot agency to extract ill-gotten commissions and bonuses from North American.

North American's allegations, generally stated, are these:  that North American contracted with Defendants to sell bona fide life insurance products to legitimate policyholders in exchange for commissions; that Defendants, using the Michael Philpot agency as a vehicle, instead participated in an illegal and fraudulent scheme to obtain upfront commission and bonus payments from North American from at least 2004 through May 2007; that this scheme involved Defendants' making secret payments to individuals to apply for insurance policies and/or paying the policy premiums for such policies ("Sham Policies"), knowing full well that the "policyholders" had no good faith intention of maintaining their policies as designed (the "Illegal Commission Scheme"); that North American issued the Sham Policies and paid Defendants and other agents in the Michael Philpot agency tens of millions of dollars in ill-gotten up-front sales commissions and unearned bonuses.  North American's valid claims for unfair competition, breach of contract, bad faith, fraud, negligence, unjust enrichment, violation of RICO, declaratory relief and accounting are all based upon these well-pleaded allegations of Defendants' malfeasance, and these cognizable claims easily survive Defendants' Motion.

Not only does Defendants' Motion utterly fail to establish any legal basis for dismissal, it is Defendants' Motion--which is filled with gross mischaracterizations of the actual allegations in North American's complaint, obvious red herrings, and clear

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  misapplications and misunderstandings of Rule 12(b)(6) and other relevant law-- that
2  is bizarre, irrational and, in the end, fatally flawed:

3      •    Defendants argue that Proposition 103 (and related California Insurance
4  Code Section 750(d)) expressly permits rebating.  However, the Proposition does not
5  apply to life insurance.  Even if it did apply, the clear intent of Proposition 103 was
6  not to protect insurance agents who engage in improper sales schemes as the
7  Defendants did here.  In any event, Proposition 103 does not prohibit contracting
8  parties from agreeing to refrain from rebating like Defendants agreed to do when they
9  became sales agents for North American;

10     •    Defendants grossly mischaracterize North American's fraud and breach
11 of contract claims in an attempt to argue that North American failed to state causes of
12 action, although such claims are clearly alleged on the face of North American's
13 Complaint;

14     •    Defendants argue that North American's claims are within the primary or
15 exclusive jurisdiction of the Insurance Commissioner.  This argument is a non-
16 sequitur.  As even the cases cited by Defendants themselves make clear, the Insurance
17 Commissioner only has jurisdiction over challenges to the reasonableness of rates or
18 premiums approved by the Department of Insurance, neither of which are implicated
19 by North American's Complaint; and

20     •    Lastly, all of the foregoing arguments, which are based on Defendants'
21 central premise, i.e., that their scheme to obtain upfront commissions was really just
22 legal rebating, are belied by their assertion their purported Fifth Amendment privilege
23 against self-incrimination.  If what Defendants did was, in fact, merely legal rebating,
24 there would be no need for them to invoke this constitutional protection at all.

25     Thus, as discussed in more detail below, North American has properly alleged
26 facts sufficient to state cognizable claims, and Defendants' Motion should be denied
27 in its entirety.
28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

2

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## II.    LEGAL ARGUMENT

**A.    Standard Governing Motions To Dismiss**

A Rule 12(b)(6) motion tests the legal sufficiency of the claim or claims stated in the complaint.  In reviewing a Rule 12(b)(6) motion, the court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them.  *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998); *see also Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *United States v. White*, 893 F. Supp. 1423, 1428 (C.D. Cal. 1995) (quoting text).  On a motion to dismiss, the court must decide whether the facts alleged, if true, would entitle plaintiff to some form of legal remedy.  *See Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).  Unless the answer is unequivocally "no," the motion must be denied.  *Id.*; *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978); *SEC v. Cross Fin'l Services, Inc.*, 908 F. Supp. 718, 726–727 (C.D. Cal. 1995) (quoting text).

Moreover, "[t]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted."  *Gilligan v. Jamco Develop. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (emphasis added; internal quotes omitted).  A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981) (a 12(b)(6) dismissal is proper only in "extraordinary" cases); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995) ("[a] suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim").

Here, North American has more than sufficiently alleged facts to support its claims.

DOCSLA-15636242.1-MCOOLEY

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**B.    Proposition 103 And California Insurance Code 750(d) Do Not Provide Grounds For Dismissal Of North American's Claims Against Defendants**

Defendants' primary argument in support of their Motion is that rebating is legal under California Insurance Code Section 750(d), which was enacted in response to the passage of Proposition 103. This argument fails on several counts. The California Supreme Court has expressly held that Proposition 103 does not apply to life insurance. Even if it were somehow applicable, the intent of the Proposition was to increase the affordability of certain types of insurance (primarily auto insurance) to consumers, not to protect insurance agents engaged in fraudulent sales schemes. Regardless of the Proposition's application, parties have a right to enter into a contract prohibiting the use of rebates, which is precisely what North American and Defendants did here. Thus, Defendants' effort to use Proposition 103 as a shield for their nefarious conduct is unavailing.

**1.    Defendants' Reliance On Insurance Code Section 750(d) Is Without Merit Because The Statute Does Not Apply To Life Insurance**

Defendants conveniently overlook the fact that Proposition 103 and Insurance Code Section 750(d) have absolutely no applicability to life insurance. As Insurance Code Section 750(d) specifically states, "Nothing in this section is intended to limit, restrict, or in any way apply to, the rebating of commissions by insurance agents or brokers, *as authorized by Proposition 103*, enacted by the people at the November 8, 1988, general election." (Emphasis added). As the California Supreme Court has expressly acknowledged, Proposition 103 applies to "all insurance on risks or on operations in this state, *except those listed in Section 1851*." *Calfarm Ins. Co. v. Deukmejian*, 48 Cal. 3d 805, 812 n.1 (1989) (emphasis added). California Insurance Code section 1851 lists reinsurance, *life insurance*, title insurance, certain types of marine insurance, disability insurance, workers' compensation insurance, mortgage insurance, and insurance transacted by county mutual fire insurers. *Id.* (emphasis added); *see also Manufacturers Life Ins. Co. v. Superior Court (Weil Ins. Agency)*, 10

DOCSLA-15636242.1-MCOOLEY

NORTH AMERICAN'S OPPOSITION TO MOTION TO DISMISS

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    Cal. 4th 257, 282 (1995) ("***Proposition 103 does not apply to several lines of***

2    ***insurance, among which is life insurance***") (*citing* Insurance Code § 1861.13)

3    (emphasis added).  Accordingly, Defendants cannot use Proposition 103 (or Insurance

4    Code Section 750(d)) to defeat North American's claims.

5       **2.  Even Assuming, *Arguendo*, Proposition 103 Did Apply To Life**

6          **Insurance, It Is Not Intended To Apply To Defendants' Illegal**

7          **Conduct.**

8       Even if Proposition 103 were somehow applicable to life insurance, which it

9    expressly is not, the clear intent behind the Proposition was not to protect or

10   encourage the kind of improper acts North American alleges was perpetrated by

11   Defendants here.

12      As the California Supreme Court recognized, Proposition 103 was geared

13   primarily towards automobile insurance with the following goal in mind:

14      "[enormous] increases in the cost of insurance have made it both

15      unaffordable and unavailable to millions of Californians," and that "the

16      existing laws inadequately protect consumers and allow insurance

17      companies to charge excessive, unjustified and arbitrary rates." ***The***

18      ***initiative's stated purpose is to ensure that "insurance is fair, available,***

19      ***and affordable for all Californians***."

20   *Calfarm Ins. Co.*, 48 Cal. 3d at 812-813 (emphasis added).

21      The intent of Proposition 103 was also clearly articulated by Harvey Rosenfeld,

22   the author of the initiative: "The 1988 ballot initiative … sought to impose regulation

23   and create a more competitive and fair marketplace for insurance in California."

24   Harvey Rosenfeld, *Auto Insurance: Crisis and Reform*, 29 U. Mem. L. Rev. 69, 100

25   (1998).  Among the proposed changes in the Proposition included repealing

26   California's anti-rebate law, which as Rosenfeld states, prohibited insurance agents

27   and brokers "from reducing their own commission in order to offer consumers a lower

28   price.  The anti-rebate law rewarded the inefficiency of some agents because it

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  shielded them from competition by agents who were willing to work harder to satisfy

2  their customers." *Id.* at 107.  Thus, the clear purpose of the Proposition was to foster

3  competition for the benefit of consumers, and to increase the affordability of particular

4  types of insurance, particularly auto insurance, for consumers.  *Id.*  Thus, the pro-

5  consumer, pro-competition Proposition 103 has nothing whatsoever to do with the

6  kind of malfeasance Defendants are alleged to have perpetrated.  The purpose behind

7  Proposition 103 ***cannot*** have been to allow insurance agents like Defendants to gain

8  undeserved commissions and bonuses through an insurance sales scam, as North

9  American alleges Defendants accomplished by selling the Sham Policies.  Thus,

10  accepting North American's allegations as true for purposes of Defendants' Motion,

11  Proposition 103 is wholly unavailing as a defense to North American's claims.

12      **3.**        **Parties Have The Right To Contract And Agree To Terms Limiting**

13                   **Rebating, Regardless Of Whether Insurance Code Section 750(d)**

14                   **Permits Rebating (And It Does Not)**

15      In any event, nothing in Insurance Code Section 750(d), or Proposition 103,

16  prohibits the parties from entering into a contract limiting or even prohibiting the act

17  of rebating.  Here, as alleged in the Complaint, the Defendants entered into such

18  contracts with North American.  Specifically, North American entered into binding

19  contracts with its general agents called a "Distributor Application and Agreement,"

20  and binding contracts with its sales agents called a "Producer Application and

21  Agreement," in which North American's general agents and sales agents agreed to

22  "[n]ot pay any premium personally, or rebate premium to any policyholder (Section

23  3(b))."  (Complaint at ¶¶ 20(e), 21(e)).  Each of the Defendants signed either a

24  Distributor Application and Agreement or Producer Application and Agreement in

25  which they agreed not to engage in rebating.  (Complaint at ¶¶ 31, 32, 34 and Ex. 3).

26

27

28

1    Defendants have not cited any public policy prohibiting the parties' right to enter into

2    a contractual relationship prohibiting the use of rebating.[1]

3         In sum, Defendants' reliance on Proposition 103 and Insurance Code Section

4    750(d) is woefully misplaced in that it offers them no defense to North American's

5    claims.

6    **C.    Defendants' Attempts To Distract The Court By Reframing North**

7    **American's Allegations Fail: The Complaint Alleges Viable Claims Against**

8    **Defendants For Inducing North American To Pay Them Upfront**

9    **Commissions Through Their Illegal Commission Scheme**

10        In support of their Motion, Defendants argue that (1) the complicit individuals

11   in whose names North American issued policies were "qualified insureds… as a

12   matter of health and wealth…", (2) Defendants did not breach any legally cognizable

13   contract provisions in their contracts with North American, and that (3) North

14   American received the benefit of its bargain under the "insurance policies"

15   Defendants sold.  (Mtn to Dismiss, Sections B, C, D).  As discussed in turn below, to

16   advance these spurious arguments, Defendants torture the actual allegations in North

17   American's Complaint beyond recognition, dismiss their contracts with North

18   American as mere nullities, and repeatedly engage in the suspension of reality.

19        **1.    North American's Complaint Properly Alleges That The Sham**

20        **Policies Were Applied For By Individuals Complicit In The Illegal**

21        **Commission Scheme Solely To Facilitate The Payment Of**

22

23

---

24   1 Inexplicably, Defendants also make the following arguments: (a) North American
     fails to allege that insurance agent warrant that monies used to pay the insurance
25   premiums come from segregated source of funds; (b) the complaint does not seek
     rescission; (c) North American fails to allege that prospective insured was asked
26   whether the policy would be maintained for a certain duration, or about the source of
     premium payment.  (Mtn to Dismiss at pp. 9-10.) None of these arguments can
27   constitute grounds for dismissal of North American's claims in that they are patently
     irrelevant to the allegations in the Complaint.

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DOCSLA-15636242.1-MCOOLEY

**Commissions To Defendants, Without Any Good Faith Intent To Maintain Such Policies**

Defendants argue that North American fails to state a claim for fraud because the individuals who North American alleges were complicit in Defendants' Illegal Commission Scheme and to whom Sham Policies were issued were "real people" who "qualified" for the policies issued, and because North American "does not allege material misrepresentations in the applications for insurance to justify rescission based on fraud." (Mtn to Dismiss, Section B).  Both arguments are red herrings.

It does not matter whether or not the individuals complicit in Defendants' scheme were "real people" who were "qualified" for the insurance policies that were issued to them, because, on its face, the Complaint alleges that North American was induced by Defendants to issue the Sham Policies to these complicit individuals on false pretenses.  North American alleges that Defendants duped North American into believing that the individuals complicit in their scheme were actually people who wanted to buy bona fide life insurance policies as those policies are designed and intended, not the paid proxies of Defendants who applied for the policies solely to facilitate the payment of illicit commissions to Defendants.  (Complaint, ¶ 36).  North American also alleges that Defendants concealed that they had advanced these complicit individuals the necessary premiums payments to maintain the Sham Policies, until such time as they could obtain the commissions, after which, they would let the Sham Policies lapse. (*Id.*, ¶ 38).  Thus, notwithstanding Defendants' effort to shift the Court's focus off of themselves and onto the purportedly "real" and "qualified" complicit individuals, the Complaint still properly alleges that the Defendants perpetrated the Illegal Commission Scheme to unlawfully extract unearned commissions from North American.

Moreover, in the context of Defendants' Illegal Commission Scheme, Defendants' assertion that North American does not properly state a fraud claim

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

8

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   because the Complaint does not allege that the insurance policy applications were

2   themselves fraudulent, is only another mischaracterization of North American's actual

3   allegations.  North American does not allege that the Sham Policies were fraudulent

4   because of the information contained in them was untruthful or because the ostensible

5   "applicants" were not "qualified."  Such matters are irrelevant here.  ***Rather, North***

6   ***American alleges that it was the scheme perpetrated by Defendants to procure those***

7   ***bogus policies and collect commissions on them that was fraudulent.***  As the

8   Complaint makes plain, North American sues Defendants not on the Sham Policies

9   themselves, but for rigging the outcome of hundreds of insurance transactions by

10  either purchasing Sham Policies for the complicit individuals by advancing premium

11  payments or paying the complicit individuals secret rebates for applying for these

12  policies. (Complaint, ¶¶ 45, 56, 64, 67, 73, 86, 93, 94, 101, 103, 108-113).  The

13  Complaint sets out Defendants' scheme in detail:  they advanced a single premium for

14  the complicit individual holding each Sham Policy in an amount equal to the

15  minimum premium necessary for Defendants to earn the maximum commission, but

16  an amount insufficient to continue the policy in force for more than a few years.

17  (Complaint, ¶38).  Defendants would then collect from North American up-front sales

18  commissions for these Sham Policies.  (*Id.*)  Of course, the Sham Policies would

19  subsequently lapse as Defendants had planned all along, although this is not how the

20  policies were designed. (*Id.*, ¶¶ 38, 39).  Defendants knew this material information,

21  but concealed it from North American in order to perpetuate their scheme and profit

22  from it.  (*Id.*, ¶ 39).  As is properly alleged in the Complaint, Defendants' conduct

23  constituted fraud, among other claims.

24      Defendants then put forth another canard: they claim that North American's

25  allegations against them are based on the premise that they "concealed the true

26  intention as to the duration that the life insurance policies would be kept in force."

27  (Mtn to Dismiss, p. 10).  Defendants' argument misses the mark entirely.  It is not that

28  Defendants concealed the true intention as to the "duration" of the Sham Policies, it is

1   that unbeknownst to North American and unlike in a bona fide life insurance policy

2   sold in the ordinary course, ***Defendants fraudulently predetermined that the duration***

3   ***of each policy would be just long enough for them to secure their commissions,***

4   ***because they had it rigged each transaction from the inception.*** (Complaint, ¶ 38).

5   North American would not have issued the Sham Policies had it known of

6   Defendants' true intentions, and the Complaint properly alleges North American's

7   justifiable, but unfortunate reliance on Defendants' misrepresentations. (*Id.*, ¶ 39, 40,

8   94).

9       And Defendants' hypothetical as to whether or not North American would have

10  to pay a death benefit if one of the "complicit" insureds died of a heart attack one

11  month after the issuance of a Sham Policy and after the premium had been paid, is

12  fundamentally irrelevant to North American's claims against Defendants, does not

13  change the fact that North American alleges that the Sham Policies lapsed ***due to the***

14  ***intentional acts of Defendants***, and in no way absolves them of their malfeasance

15  relating to the issuance of the Sham Policies in the first instance.  Of course, taking the

16  normal business risk that a legitimate policyholder might die of a heart attack early in

17  a policy period is one thing, but Defendants' hatching a scheme to induce North

18  American to issue the Sham Policies, and then pay Defendants tens of millions of

19  dollars in commissions, bonuses, as well as incur significant underwriting costs as a

20  result, is something entirely different; indeed, such illegal conduct gives rise to the

21  very claims that North American alleges in its Complaint.

22      At bottom, North American's claims against Defendants have nothing to do

23  with the fact that Defendants did not maintain the Sham Policies in place "until they

24  were profitable," as Defendants declare.  Rather, North American's claims against

25  Defendants are premised on the fact that the Defendants planned and schemed from

26  the very beginning that the Sham Policies ***were only going to be profitable for***

27  ***themselves***.  Defendants' Motion should be denied.

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DOCSLA-15636242.1-MCOOLEY

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1

### 2. The Complaint Alleges A Valid Breach Of Contract Claim Against Defendants

Defendants also argue that North American cannot assert breach of contract or bad faith claims against them because "the claim of an insurance company that an agent has a contractual obligation to maintain the policies in force conflicts with the agent's obligation as the agent for the insured to maintain the best coverage possible at the least cost for the insured…" (Mtn to Dismiss, Section C). Yet again, Defendants try to twist the allegations in the Complaint into something that they are not.

North American alleges, and the Producer Agreements incorporated into the Complaint by reference confirm, that Defendants agreed to "make reasonable efforts to maintain North American's policies," not that they were "contractually obligated" to maintain the policies. (Complaint, ¶¶ 20(a), 21(a), 29). North American alleges claims that run contrary to their promise to make reasonable efforts to keep North American's policies in place. Defendants did the exact opposite when they perpetrated the Illegal Commission Scheme and they set up Sham Policies that would lapse after Defendants obtained maximum commissions. (*Id.* ¶¶ 62-82). By any rational measure, on their face, North American's allegations of Defendants' conduct state a claim for a breach of Defendants' promise to make reasonable efforts to keep North American's policies in place. (*Id.*)

North American also alleges that Defendants agreed in their Producer Agreements that they would "not pay any premium personally or rebate a premium to any policyholder." (Complaint, ¶¶ 20(e), 21(e), 29, 34). As discussed herein at Section B above, because Proposition 103 does not apply to life insurance, it offers Defendants no protection. Accordingly, North American states a valid claim for breach of contract by alleging that notwithstanding their promise, Defendants paid secret rebates and advanced premium payments to procure the Sham Policies as a part of the Illegal Commission Scheme. Defendants' assertion that the facts alleged in the

1  Complaint do not state a cognizable claim for breach contract is nonsensical.

2      Additionally, Defendants' argument that their contracts with North American

3  are unenforceable because "for the purpose of procuring the insurance policies,"

4  Defendants were "agents" of each "insured" and that Defendants' "loyalty" was to

5  them, is a total suspension of reality.  North American's Complaint, which the Court

6  must take as true for purposes of Defendants' Motion, sets out the facts demonstrating

7  the Illegal Commission Scheme, pursuant to which complicit individuals helped

8  Defendants procure the Sham Policies. (Complaint, ¶¶ 36-46).  This Court cannot

9  allow Defendants to ignore North American's actual allegations and pretend

10  otherwise.

11      **3.    North American Clearly Did Not Receive "Exactly What It**

12  **Bargained For" On The Sham Policies, As It Lost Tens Of Millions**

13  **Of Dollars Due To Defendants' Illegal Commission Scheme**

14

15      Astonishingly, even in the face of North American's claims of massive fraud,

16  unfair competition, breach of contract and other myriad wrongs, Defendants

17  nevertheless proclaim in their Motion that North American "received exactly what it

18  bargained for" under the Sham Policies.  (Mtn to Dismiss, p. 12).  Defendants argue

19  that all that North American bargained for was Defendants' "bringing [it] a buyer,

20  ready willing able and qualified to buy [insurance]," and because Defendants

21  purportedly brought such "buyers" they were entitled to their commissions.  This

22  argument is farcical.

23      Rule 12(b)(6) requires this Court to assume the truth of the allegations in North

24  American's Complaint, and North American alleges that these so-called "buyers"

25  were not buyers at all, but complicit individuals who aided Defendants in the

26  submission of the Sham Policies to North American as a part of the Illegal

27  Commission Scheme.  (Complaint, ¶¶ 36-46).  What North American bargained for

28  when it entered its agreements at issue was that Defendants would sell bona fide life

NORTH AMERICAN'S OPPOSITION TO MOTION TO DISMISS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DOCSLA-15636242.1-MCOOLEY

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   insurance products to legitimate insureds as those products were designed and

2   intended, that they would make reasonable efforts to maintain such policies in place,

3   and refrain from paying any premium personally or rebate a premium to any

4   policyholder.  (*Id.*, ¶¶ 20, 21, 29, 34).  Instead, North American alleges that it

5   "received" the Illegal Commission Scheme, and lost over $24 million in commissions

6   and bonuses paid to Defendants and the Michael Philpot agency between 2004 and

7   2007, in addition to incurring significant underwriting costs. (*Id.*, ¶¶ 47-50).

8   Furthermore, North American alleges that it paid Defendants and the Michael Philpot

9   agency approximately $15 million in commissions and bonuses for policies currently

10  in-force, that will likely lapse as well due to Defendants' Illegal Commission Scheme.

11  (*Id.*, ¶ 50).  Thus, as alleged by North American, the suffering of such serious

12  financial harm can hardly be viewed as "getting the benefit of the bargain" that North

13  American struck with Defendants when they became its sales agents.

14  **D.      The Primary Or Exclusive Jurisdiction Doctrine Invoked By Defendants Is**

15  **          Also Inapplicable**

16          Moreover, Defendants' argument that North American's claims are within the

17  exclusive or primary jurisdiction of the California Insurance Commissioner is wholly

18  unsupported by California law.  Defendants primarily rely on two cases – *P.W.*

19  *Stephens, Inc. v. State Compensation Insurance Fund*, 21 Cal. App. 4th 1833 (1994)

20  and *Krumme v. Mercury Insurance Company*, 123 Cal. App. 4th 924 (2004), in

21  support of this argument, but neither even remotely apply to the facts of this case.

22          In the *P.W. Stephens* case, plaintiff, an asbestos abatement service provider,

23  was challenging a premium surcharge imposed for workers' compensation insurance

24  on the ground that it was illegal, unreasonable and unfair.  21 Cal. App. 4th at 1835.

25  The defendant demurred on the ground that plaintiff failed to exhaust administrative

26  remedies before the Insurance Commissioner, and the trial court sustained.  *Id.* at

27  1835, 1839.  The Court of Appeal affirmed the trial court's ruling because the

28  Insurance Commissioner is expressly "entrusted with responsibility to ensure that

DOCSLA-15636242.1-MCOOLEY

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   rates, premiums and even surcharges are fair and reasonable" under the Insurance

2   Code and applicable regulations. *Id.* at 1839-1840. The Court cited Insurance Code

3   Sections 11732 and 11741 (which empower the Insurance Commissioner to hold

4   hearings when a classification or merit rating is challenged and when a workers'

5   compensation insurer violates certain provisions of the Insurance Code ). *Id.* In

6   addition, applicable insurance regulations provide that "[a]ny insured employer who

7   believes his workers' compensation insurance coverage ... is contrary to the Manual

8   or other regulations of the Insurance Commissioner governing classification of risks

9   and premium rates for workers' compensation insurance may file a complaint with the

10  Bureau." Cal. Code Regs., title 10, § 2350.

11      In *Krumme*, a private citizen filed suit on behalf of the general public seeking

12  injunctive relief against insurers under California's Unfair Competition Law (UCL)

13  for selling auto insurance and other personal lines insurance policies through brokers

14  who were the insurers' agents but charged brokers' fees. 123 Cal. App. 4th at 932.

15  The Court of Appeal in *Krumme*, held that the Insurance Commissioner has exclusive

16  original jurisdiction over issues related to ratemaking, but otherwise, the Insurance

17  Code did not displace the UCL. *Id.* at 936. This case did not "relate to ratemaking"

18  as it did not challenge "any rate or premium which Mercury submitted to or obtained

19  approval from the ... Department of Insurance," and therefore, did not fall within the

20  exclusive jurisdiction of the Insurance Commissioner. *Id.* at 937.

21      Both *P.W. Stephens* and *Krumme* support the proposition that ratemaking issues

22  are within the Insurance Commissioner's jurisdiction. Here, however, North

23  American is not challenging the reasonableness of rates, premiums, surcharges, or

24  other ratemaking issues approved by the Department of Insurance, nor has North

25  American even asserted that Defendants violated any provision of the California

26  Insurance Code or Regulations. As clearly set forth in the Complaint, North

27  American is alleging that Defendants are engaged in a scheme of offering and paying

28  individuals, posing as legitimate potential insureds, secret rebates and other monetary

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   incentives in exchange for these individuals applying for the Sham Policies, without

2   any intention of maintaining these policies.  (Complaint, ¶¶ 4, 36, 56).  Thus, North

3   American is not challenging the amount of the rates charged.  Instead, it is challenging

4   the improper means by which Defendants have sold life insurance policies for the

5   purpose of making a profit.

6        Defendants fail to cite a single Insurance Code section or applicable regulation

7   dictating that North American's claims fall within the exclusive or primary

8   jurisdiction of the Insurance Commissioner.   Furthermore, the only cases Defendants

9   cite in support of this argument are wholly inapposite to the facts of this case.[2]

10  Accordingly, because North American's claims are sufficiently pleaded, Defendants'

11  Motion must be denied.

12  **E.     Defendants' Assertion That Nothing They Did Was Illegal Is Belied By**

13  **       Their Assertion Of The Fifth Amendment As A Defense**

14       Remarkably, after repeated assertions throughout their Motion that their

15  conduct relating to the sale of North American insurance products was expressly

16  permitted by law under Insurance Code Section 750(d), Defendants inexplicably

17  assert their purported Fifth Amendment rights against self-incrimination as a defense

18  to North American's claims.  Specifically, Defendants argue that if this case were to

19  go forward, they would be exposed to potential penalties under Insurance Code

20  Section 10509.9 and license revocation provisions.  First, Section 10509.9 governs the

21  replacement of existing life insurance and annuities contracts.  North American has

22  not made any assertions whatsoever that Defendants improperly replaced policies, so

23  this Section is inapplicable.  Second, North American is not seeking to revoke

24  Defendants' licenses, so the license revocation provisions to which Defendants refer

25  _____

26  [2] Defendants also cite *Allstate Ins. Co. v. State Board of Equalization*, 169 Cal. App.
    2d 165 (1959), but why they did is unclear.  Although the case discusses whether
    installment payment fees received by an insurer were taxable as "gross premiums,"
27  (id. at 168), the Court in *Allstate* did not discuss the primary or exclusive jurisdiction
    doctrine.

28

DOCSLA-15636242.1-MCOOLEY

NORTH AMERICAN'S OPPOSITION TO MOTION TO DISMISS

also do not apply either. Most notably, if Defendants have done nothing wrong as they assert, then the Fifth Amendment and its protection from self-incrimination would not be an issue. But in any event, the potential sanction raised by Defendants is not applicable to North American's claims in this case, although the invocation of this constitutional protection speaks volumes about Defendants' complicity in the Illegal Commission Scheme. Accordingly, Defendants' purported Fifth Amendment rights do not provide sufficient grounds for dismissal of the Complaint.

### III.    CONCLUSION

North American has properly alleged viable claims against Defendants. As clearly set forth in the Complaint, Defendants participated in the Illegal Commission Scheme pursuant to which they offered and paid to complicit individuals, posing as legitimate potential insureds, secret rebates, advanced premiums and other monetary incentives, in exchange for these individuals applying for the Sham Policies, which were predetermined to lapse once Defendants extracted the maximum commissions possible. These factual allegations, assumed to be true for purposes of Defendants' Motion, are more than sufficient to state the valid and cognizable causes of action in the Complaint that will entitle North American to substantial damages, according to proof.

Defendants' reliance on Proposition 103, their numerous, fatally flawed arguments mischaracterizing North American's fraud and breach of contract claims, the primary or exclusive jurisdiction doctrine, and their invocation of the Fifth Amendment, are all in vain. Defendants' Motion utterly fails to provide any adequate grounds for the dismissal of North American's claims. Accordingly, in view of the foregoing points and authorities, North American respectfully requests that Defendants' Motion be denied in its entirety.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DOCSLA-15636242.1-MCOOLEY

1   DATED:  April 21, 2008       REED SMITH LLP

2                             By    s/ Miles M. Cooley

3                                Robert D. Phillips, Jr. (SBN 82639)
                                 Miles M. Cooley (SBN 206783)

4                                Attorneys for Plaintiff
                                North American Company For Life

5                                and Health Insurance
                                email:  mcooley@reedsmith.com

6   DOCSOAK-9906502.1

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DOCSLA-15636242.1-MCOOLEY

NORTH AMERICAN'S OPPOSITION TO MOTION TO DISMISS

# PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. I am employed in the office of a member of the bar of this court at whose direction the service was made. My business address is REED SMITH LLP, 1999 Harrison Street, Suite 2400, Oakland, CA 94612-3572.

On April 21, 2008, I electronically filed the following document(s) with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all other parties appearing on the docket sheet, as listed below.

**PLAINTIFF NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE'S OPPOSITION TO FRCP 12(B)(6) MOTION TO DISMISS OF DEFENDANTS HIRSH AND LACAPE**

Raymond A. Greenberg    raylaw43@msn.com

M. Andrew Schneider    aschneider@tahlaw.com

I declare under penalty of perjury under the laws of the United States that the above is true and correct. Executed on April 21, 2008, at Oakland, California.

Rowena Lerma
email: rlerma@reedsmith.com

DOCSOAK-9906505.1

REED SMITH LLP
A limited liability partnership formed in the State of Delaware