Raymond A. Greenberg SBN 43394
Perry R. Fredgant SBN 105755
raylaw43@msn.com
RAYMOND A. GREENBERG, ATTORNEY AT LAW
1521 La Venta Road
Westlake Village, CA 91361-3404
Telephone: 805-373-5260
Facsimile: 805-494-8312

Attorneys for Defendant Virginia B. Hirsh

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

NORTH AMERICAN COMPANY FOR
LIFE AND HEALTH INSURANCE,
            Plaintiff,
     vs.

MICHAEL L. PHILPOT, an individual,
VIRGINIA B. HIRSH, an individual, JOHN
B. KUYKENDALL, an individual,
RENE ALEJANDRO LECAPE, an
individual, C. RICHIE MCNAMEE, an
individual and HECTOR PAEZ VALDEZ,
an individual,
       Defendants,

Case No.:08 CV 0270 BEN NLS

REPLY OF DEFENDANT HIRSH TO
PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS

Hearing Date: May 5, 2008
Time: 10:30 A.M.
Courtroom: 3

`

## I.  <u>INTRODUCTION</u>

Law students all learn that every cause of action must contain three basic elements, sometimes referred to as the three "R's": the Plaintiff's right, the Defendant's wrong, and the remedy.  That formula exists regardless of whether a complaint is civil or criminal, and if civil, whether it sounds in tort or in contract.  Of course causation is implicit in every cause of action.  Although the Federal Rules of Civil Procedure are very liberal with respect to pleadings, requiring only notice and not fact pleading, still, the FRCP does not change the traditional concept of a cause of action, the three "R's".

Here, although the opposition appears compelling on its face, upon closer analysis, *the plaintiff has not established, in tort or in contract, a right, a wrong and a remedy.*

Upon rational analysis, plaintiff is doing what some health insurance companies have done: post issuance underwriting to decline coverage.

Plaintiff's argument is nothing more than analogous to "Jabberwocky" from "Alice in Wonderland".  "Twas brillig and the slithy toves…."

## II.  <u>LEGAL ANALYSIS</u>

**A.  The Rebating of Commissions by Life Insurance Agents in California is Lawful Because There Is No Statute Making That Practice Unlawful.**

Plaintiff ably and strenuously argues that Proposition 103 did not apply to life insurance, and thus *California Insurance Code (CIC)* §750(d) is not applicable.

Proposition 103 repealed former §750.  Between 1991 and 2000, the California Legislature obviously considered the *Calfarm* decision and probably considered the purposes behind Proposition 103, as expressed by Harvey Rosenfeld, its drafter, and the leader of its sponsoring organization, Voters Revolt.  The legislature could have quite simply reenacted the former §750 with the explicit exception for classes of insurance covered by Proposition 103, which would have excluded life insurance.  However, the legislature chose not to do so.

Instead, it enacted the current §750 and placed it in Chapter 5 of The Insurance Code, which it entitled "Unlawful *Referrals*" (emphasis added).

*Assuming that §750(d) does not apply, then where in any code is there a prohibition against rebating*

*commissions by a life insurance agent to anybody?*

CIC §750(a) shows the relevance of that designation, as do §§750.4 and 750.5.  Indeed, §750(a) makes unlawful "any rebate, refund, commission, or other consideration, whether in the form of money or otherwise, as compensation or inducement to or from any person for the *referral or procurement* of clients, cases, patients, or customers, is guilty of a crime". (emphasis added)

Clearly, the legislature intended to prevent what was once called champerty and barratry, which essentially now is known as "capping" or more colloquially, "ambulance chasing".  Champerty, barratry, "capping" or "ambulance chasing" is not alleged in the complaint and did not occur here.  It is not alleged in the complaint that Defendant Hirsh paid any compensation or inducement to any person for the referral or procurement of customers.

Thus, by default, whether *CIC* §750(d), or even Proposition 103, is or is not applicable to life insurance is irrelevant, because there are no sections in the Insurance Code or elsewhere that prevent the rebating of commissions earned by an insurance agent on the sale of life insurance policies.  To interpret §750(a) to the contrary would subject, expressly, the Defendants to criminal prosecution. Of course, there is a well-settled rule of statutory interpretation that criminal statutes necessarily must be strictly construed.

Therefore, plaintiff's complaint does not allege a legally protected right that could be damaged by any wrong of Defendant sounding in tort.

However, because plaintiff must necessarily argue that the conduct here violated *CIC* §750(a), Defendant's assertion of a Fifth Amendment privilege against self incrimination is applicable and must be enforced.  In other words, if the court interprets *CIC* §750(a) as applicable here, the court must stay all proceedings until all applicable statutes of limitations have expired, or Defendant Hirsh cannot testify, by reason of privilege, in her own defense in any civil proceeding or procedure, including discovery.

**B.     The Complaint Does Not Allege Any Recoverable Damages Either Sounding in Tort or in Contract.**

**1.     Under California Law, The Plaintiff Could Not Have Refused to Bind Coverage**

**Notwithstanding Either the Intentions of the Insured, the Policy Owners or the Insurance Agents, and Thus Plaintiff Received Exactly What it Bargained For.**

The issue here can be summed up by a simple hypothetical question: If the owner/insured of the policy had stated the following, could, as a matter of California law, the plaintiff refuse to bind coverage?

"Dear North American: I intend to keep this policy in force for two years because I believe that I need the coverage to pay the remaining two years of my children's college education should I die, and my children's godfather is paying the premium.", or "My insurance agent is paying the premium."

The foregoing statements illustrate plaintiff's dilemma. No insurance company would voluntarily issue a policy if told the foregoing, but, under California law, and the law of every state, the insurance company cannot refuse to issue such a policy although the duration of such policy is finite and disclosed, based upon the intention and purpose of the insured or owner and not necessarily death, because the issuance of a life insurance policy can only be based upon the health and the wealth of the insured, and not present or future intention.   Indeed, life insurance companies advertise their products to meet the perceived needs of the insured's family should the insured die while that need exists, although those needs requiring a death benefit have known termination durations.  In other words, if an insured is motivated to purchase a life insurance policy to pay his children's education should he die, that educational need has a finite duration, which insurance companies know and expect, and actually solicit.

Unless the insureds, owners and beneficiaries are fictional, plaintiff received exactly what it bargained for, because, finally, the owner has the choice of maintaining the policy in force by paying the premiums. Obviously, that has happened as alleged on the complaint, although the incidence of such continuations apparently did not meet the plaintiff's statistical average.

Therefore, plaintiff cannot make any credible argument that it would not issue the policies if  it had known that the life agents were financing the premiums and that the policies would only be in existence for three years.  To argue otherwise would mean that the insurance company's underwriting

`

1  guidelines could include denial of coverage for people with college age children, or dependant parents

2  or spouses, or with a mortgage, all of which could have finite durations that would not exist for 10 or

3  20 years.

4  **C.    Plaintiff's Breach of Contract Causes of Action Must Fail for Lack of Damages.**

5          Obviously, it is not alleged that the Defendants did not bring to the plaintiff customers who

6  were qualified for the insurance applied for as a matter of health and wealth and were ready, willing

7  and able to purchase insurance.  It is asserted that the plaintiff did not like the intentions and motives of

8  the insurance customers and the insurance agents, but plaintiff offers no legal authority to support a

9  contention that the motives and intentions of the insurance customers and the insurance agents are

10  relevant to the issue of binding of life insurance coverage.

11          The undeniable fact remains: Defendant Hirsh brought to the plaintiff life insurance risks that

12  were qualified for the life insurance based upon their health and wealth, and, pursuant to *CIC* §480, the

13  plaintiff was bound to that risk and earned the premium, and therefore Defendant Hirsh and the other

14  Defendants earned the commissions paid.

15          Thus, it is obvious that the plaintiff accepted the benefits of the contract, i.e., the premium, and

16  also accepted, and still accepts, the burdens of the contract, payment of a life insurance claim on

17  policies that still exist, but simply does not want to pay compensation for the procurement.  In the

18  event of breach of contract, the only question is whether those contract provisions were *material* to

19  each policy.

20          **1.    The Plaintiff Has Created For Itself A Free *Option* That It Wants This Court To**

21               **Enforce.**

22          If  the agency contract provisions claimed breach on material, why has not the plaintiff

23  attempted to rescind each policy that was procured and repay the premiums to each insured?

24  Obviously, the plaintiff has not rescinded any policy based upon fraud in its procurement because the

25  plaintiff wants the benefit of the policies without the burdens of the commissions and without the

26  burdens of restitution of  premium.  Thus, the plaintiff really wants the option of keeping the existing

27  policies in force, assuming, as alleged in the complaint, that a significant percentage of those policies

28

`

will be kept in force by the insureds/owners beyond 2009 and 2010, without the plaintiff paying the costs of commission and the cost of underwriting.

      2.    **The Plaintiff's Own Conduct Is Evidence That The Plaintiff Either Deems The Conduct Of Defendant Hirsh To Be Either Immaterial, Or If Material, Any Misrepresentations or Concealments Were Waived, By Not Rescinding.**

Again, it is basic to contract law that a party to a contract cannot accept the benefits of the contract without assuming the burdens of the contract.

**D.**    **If Plaintiff Believes that the Conduct Here Was A Massive Conspiracy Between Life Insurance Agents And Their Applicants On One Side And The Poor Victimized Insurance Company On The Other, A Situation That Would Warrant RICO Relief, Why Have Not All Of The Insureds Been Named As Co-conspirator Defendants?**

Because the insureds/owners obviously qualified for the life insurance as a matter of health and particularly wealth, as presumably verified by plaintiff, those people likely were and are quite sophisticated and are not the unsuspecting, innocent dupes that the plaintiff implies.

The answer to that question is evident and needs no further argument.

**E.**    **The Jurisdiction Of The California Insurance Commissioner Extends Not Only To Rate Making By Insurance Companies, But To The Conduct Of All Insurance Licensees**

Here, again, substantial argument is not necessary. Plaintiff's complaint alleges what appears to be, according to plaintiff's interpretation, a violation of *CIC* §750(a) and other CIC violations as previously cited, and the regulation and discipline of such licensees is within the exclusive jurisdiction of the California Insurance Commissioner. The Insurance Commissioner's jurisdiction is not limited to rate making. See, for example, DeLaCruz vs Quackenbush (2000) 80 Cal. App. 4th 775.

## III.   CONCLUSION

Defendant agrees with plaintiff's assertion that the purpose of Proposition 103 was to insure that insurance is fair, available and affordable for all Californians, as stated both by the drafter of the proposition, Harvey Rosenfeld, and by the California Supreme Court in *Calfarm Insurance*, 48 Cal. 3rd

at 812 - 813.

Any ambiguities created by legislation pertaining to Proposition 103 must be resolved consistent with its purposes.

Although the rebating of life insurance commissions by life insurance agents has been litigated in California after the enactment of Proposition 103, there are no published appellate decisions applicable to that issue.

There are two alternatives available to the court here.  If the court decides that rebating commissions by life insurance agents is unlawful, then not only would the purposes or Proposition 103 be frustrated but also there would be criminal consequences.

If, however, the court considers the practice lawful, not only is the consumer of insurance protected and benefited, but even the ethical insurance companies are benefited.  Nothing in such ruling would prevent such insurance companies from obtaining exactly what they bargained for in selling life insurance.

It is therefore submitted that the motion of Defendant Virginia B. Hirsh to dismiss the complaint here be granted without leave to amend, and that this matter be dismissed.

Respectfully submitted,

**Dated: April 24, 2008**                                    By:   **s/ Raymond A. Greenberg**
                                                                          **Raymond A. Greenberg**
                                                                          **43394**
                                                                          **Email: raylaw43@msn.com**