**CALLAHAN & BLAINE, APLC**
Daniel J. Callahan (Bar No. 91490)
Michael J. Sachs (Bar No. 134468)
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
(714) 241-4444
(714) 241-4445 Fax
michael@callahan-law.com

Attorneys for Defendant MICHAEL L. PHILPOT

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL L. PHILPOT, an individual, VIRGINIA B. HIRSCH, an individual, JOHN B. KUYKENDALL, an individual, RENE ALEJANDRO LACAPE, an individual C. RICHIE MCNAMEE, an individual and HECTOR PAEZ VALDEZ, an individual <br><br> Defendants. | Case No. 08 CV 0270 BEN NLS <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM [F.R.C.P. 12(B)(6)] OR, ALTERNATIVELY, MOTION FOR A MORE DEFINITE STATEMENT [F.R.C.P. 12(E)]; AND DEMAND FOR JURY TRIAL** <br><br> (Filed concurrently with Notice of Motion; Declaration of Michael J. Sachs and Request For Judicial Notice) <br><br> Date:     July 21, 2008 <br> Time:     10:00 a.m. <br> Crtrm:    3 <br><br> Complaint Filed: February 13, 2008 <br> Trial Date: None Set |

# TABLE OF CONTENTS

I.     INTRODUCTORY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.    SUMMARY OF RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

III.   LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

       A.    Legal Authority  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

             1.    Motions Brought Under Federal Rule of Civil Procedure 12(b)(6) . . . . . . . .  5
             2.    Motions Brought Under Federal Rule of Civil Procedure 12(e) . . . . . . . . . .  6

       B.    Every Cause of Action Should be Dismissed Because There is No
             Prohibition Against Advancing Premium Payments and Rebating of
             Commissions Is Legal in California Pursuant to Express Statute and Public Policy . .  6

       C.    The California Insurance Commissioner and an Administrative Law Decision
             Recognize that Life Insurance Rebating is Legal . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

       D.    Case Law Interpretation also Supports the Conclusion that The Rebating of Life
             Insurance Commissions is Legal  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

             1.    Post-Proposition 103  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

       E.    The First, Third, Fourth and Sixth Through Ninth Causes of Action All
             Incorporate by Reference the Illegal Rebating Allegations and Thus Fail to
             State a Claim  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

       F.    There is no Cause of Action for Breach of the Covenant of Good Faith and Fair
             Dealing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

       G.    Plaintiff Has Not Been Damaged . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

       H.    In the Alternative, A More Definite Statement Should Be Required  . . . . . . . . . . . .  13

IV.    CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

# TABLE OF AUTHORITIES

**Federal Cases**

*Aulson v. Blanchard,* (1st Cir. 1996) 83 F.3d 1, 3 ....................................... 5

*Bell Atlantic Corporation v. Twomby*, 127 U.S. 1955, 1965 (2007) ...................... 6

*Cahill v.Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996) ................... 5

*Durning v. First Boston Corp.,* (9th Cir. 1987) 815 F.2d 1265, 1267 ................... 6

*Federal Sav. and Loan Ins. Corp. v. Musacchio,* 695 F. Supp. 1053, 1060 (N.D. Cal. 1988) ......................................................... 6

*In Re Delorean Motor Company,* (6th Cir. 1993) 991 F.2d 1236, 1240 .................. 5

*Nishimatsu Construction, LTD. v. Houston National Bank,* (5th Cir. 1975) 515 F.2d 1200, 1206 ....................................................... 6

*Papasan v. Allain*, 478 U.S. 265, 286 (1986) ......................................... 5

*Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-534 (9th Cir. 1984) .......... 5

*SEC v. Seaboard Corp.,* (9th Cir. 1982) 677 F.2d 1315, 1316 ........................... 6


**State Cases**

*Della Penna v. Toyota Motor Sales, USA, Inc.* (1995) 11 Cal.4th 376 ................... 13

*Gomez v. Volkswagen of America* (1985) 169 Cal.App.3d 921, 926-927 ................ 13

*In the Matter of Prudential Insurance Company of America, et al.* ................ 8-10, 12

*R.D. Reeder Lathing Co. v. Cypress Insurance Co.* (1970) 3 Cal.App.3d 995 (fn. 1) ....... 7

*Seaman's Direct Buy and Service v. Standard Oil Co.* (1984) 36 Cal.3d 752, 768-771 .... 13

*State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1041 ..... 11

**Federal Statutes**

18 U.S.C. section 1962(c) .............................................................. 1

*Federal Rules of Civil Procedure*, Rule 12(e) ..................................... 6, 13

**State Statutes**

*Business & Professions Code* section 17200 ................................... 1, 8, 11

*Civil Code* section 3294 ......................................................... 13

*Insurance Code* section 750(d) ............................................... 1, 2, 8

**Other**

*5 G. Wright & A. Miller*, Federal Practice and Procedure § 1216, pp. 235-236
(3d Ed. 2004) ................................................................ 6

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.

3

### INTRODUCTORY STATEMENT

4    Plaintiff, North American Company for Life and Health Insurance ("North American")

5 sued Michael L. Philpot ("Philpot") for unfair competition under California *Business &*

6 *Professions Code* section 17200, breach of contract, breach of covenant of good faith and fair

7 dealing, fraud, negligence, unjust enrichment, violation of 18 U.S.C. section 1962(c) - civil

8 RICO, declaratory relief, and accounting.  The fundamental "wrong" underlying each and

9 every cause of action of the Complaint is the alleged scheme of "paying secret rebates and/or

10 advancing premium payments."

11    The Complaint is fatally defective because: (1) there is no prohibition, statutory or

12 contractual against advancing premium payments as long as the agent does not personally pay

13 the premium (which has not been alleged), (2) the rebating of life insurance commissions is

14 legal, both as a matter of express law (California *Insurance Code* section 750(d)) and public

15 policy, and (3) assuming *arguendo*, rebating occurred, it forms the basis for nothing other

16 than breach of contract or negligence.

17    Prior to the passage of Proposition 103 in 1988, California law prohibited direct or

18 indirect payments of any part of a premium as an inducement to purchase insurance, including

19 life insurance. Proposition 103 repealed all of the anti-rebate statutes.  Proposition 103 was

20 codified, in part in *Insurance Code* section 750(d) which provides "Nothing in this section is

21 intended to limit, restrict, or in any way apply to, the rebating of commissions by insurance

22 agents or brokers, as authorized by Proposition 103, enacted by the people at the November 8,

23 1988, general election."

24    Further, since the complaint alleges that Defendants were "paying secret rebates

25 **and/or** advancing premium payments" (¶ 4); and since there is no statutory or contractual

26 prohibition against advancing premium payments (as long as the agent does not personally

27 pay the premium, which Plaintiff has not alleged) and since rebating is, at best, a contractual

28 prohibition, Plaintiff has failed to allege sufficient facts to constitute a cause of action.  By

1   using the term "and/or," Plaintiff has left open the door that the alleged conduct is not even

2   contractually prohibited.

3         The legislative history of Section 750(d) and judicial and administrative law judge

4   determinations all support the conclusion that rebating of life insurance commissions is legal.

5   As a result, there is no "wrong" alleged in the Complaint to support any of Plaintiff's causes

6   of action and the Motion to Dismiss should be granted as to all causes of action.

7

8                                          **II.**

9                          **SUMMARY OF RELEVANT FACTS**

10        Plaintiff alleged that Philpot was a general insurance agent for North American,

11   licensed in the State of California and sold North American insurance products, specifically,

12   Universal Life or "UL" policies. (Complaint, ¶ 2.)  Philpot ran the "Michael Philpot Agency,"

13   which was comprised of a number of sales agents used to sell insurance products in interstate

14   commerce, and which is claimed (in conclusory terms) to be "an enterprise" involved in a

15   scheme to illegally obtain compensation for the sale of life insurance policies in the form of

16   sales commissions from North American and in the form of bonuses from other managing

17   general agents.  (Complaint, ¶ 3.)

18        It is alleged that this so-called "enterprise" illegally obtained millions of dollars in

19   "undeserved and unearned commissions and bonuses," through a "scheme of offering and

20   paying secret rebates and/or advancing premium payments to North American and other

21   insurance companies in exchange for the application of life insurance policies from North

22   American and other companies by "certain [unnamed] complicit individuals," without any

23   good faith intention of actually "maintaining these policies or paying the premiums for them

24   as those policies were designed or as these policies require." (Complaint, ¶¶ 4, 36); emphasis

25   added.  Blatantly missing is an alleged contractual provision requiring maintenance of policies

26   by the policyholders for any time period.  Also missing is an explanation why any of this

27   alleged conduct is "illegal."

28

1   North American claims that after Defendants unlawfully collect the up-front sales
2   commissions and bonuses, the policies lapse with significant negative account values within
3   three years of their issue, long before collected premiums cover the costs and expenses
4   associated with these policies incurred by North American. (Complaint, ¶ 5.)  North American
5   refers to this as "The Illegal Commission Scheme."  There is, however, nothing "illegal"
6   about this alleged "scheme."  As noted above, at best, Plaintiff has alleged a breach of
7   contract. (Complaint, ¶ 6.)  Moreover, North American fails to allege (nor can it) any control
8   by Philpot over a policyholder's maintenance of a policy or payment of premiums for any
9   period of time.  What North American describes as the "Illegal Commission Scheme," is the
10  underlying wrong supporting the entire Complaint.

11      North American further alleges that Defendants either purchased these life insurance
12  policies for the complicit individuals by advancing premium payments or paying these
13  complicit individuals secret rebates for applying for these policies.  North American alleges
14  that a single premium is paid for each policy in an amount equal to the minimum premium
15  necessary for Defendants to earn the maximum commission on the policy, in an amount
16  insufficient to continue the policy in force for more than a few years.  North American goes
17  on to allege that Defendants then unlawfully collect the up-front sales commissions paid to
18  them by North American.  North American never alleges the basis for its contention that this
19  conduct is "unlawful."  North American alleges that since it amortizes policies over 20 years,
20  and that the policies allegedly lapse with significant negative account values within three
21  years of their issue, the collected premiums don't cover the cost and expenses incurred by
22  North American associated with these policies. (Complaint, ¶ 38.)

23      As evidence to support its alleged "Illegal Commission Scheme," North American
24  claims that about 13% of UL policies it issues <u>lapse before the end of the third year</u> of the
25  policies but that as to the policies written by the Michael Philpot Agency <u>since 2004,</u>
26  <u>approximately 88 percent have lapsed by the end of the third year of the policy</u>.  (Complaint, ¶
27  41.)  North American also claims that of the policies written by Defendants, none qualified
28  for the "return of premium feature," which provides that the policy will get a surrender

1  amount of premium after the tenth anniversary of the policy equal to the amount of premiums

2  paid for the policy up to the date the insured surrenders the policy, less any rider costs.  To

3  qualify for this return of premium feature, a policyholder must pay a certain percentage of the

4  guideline premium for the policy within six months of the date the policy is issued.

5  (Complaint, ¶¶ 42 and 43.)  North American claims that since none of these policies reflected

6  a "long term position on the part of the policy," this is further evidence of the "Illegal

7  Commission Scheme."  North American relies heavily on the high number of lapsed UL

8  policies and that none of the policyholders qualified for the return of premium feature as

9  being indicia of the Illegal Commission Scheme.  (Complaint, ¶ 44.)

10      Nowhere in Plaintiff's Complaint does North American allege that any of the policies

11  required any policyholders to qualify for the return of premium feature or to maintain the

12  policies for any period of time.  Nor does North American claim that Philpot had any degree

13  of control over the policyholders' continued payment of premiums and maintenance of their

14  policies.  North American also does not reference what its own parent company, Sammons,

15  acknowledges on its own website:  "That the barriers for its customers to switch to another

16  insurance company are low . . . ."  (See, Request for Judicial Notice ("RFJN") ¶ 5 and Ex. "5"

17  to the Declaration of Michael J. Sachs (Sachs Decl.).)  Thus, North American's own parent

18  company acknowledges that insureds often switch carriers.  However North American does

19  allege in purely conclusory terms that these unknown and unnamed "complicit individuals"

20  who applied for the policies through the Michael Philpot Agency "never intended to maintain

21  or pay premiums on the policies" and "only applied and purchased said policies because of

22  the Illegal Commission Scheme."  The intent of the insureds is irrelevant, however, and there

23  is no known bar to an insured taking out a policy for one year.

24      The Complaint is replete with such conclusory allegations, based upon unknown and

25  unnamed individuals participating in some "Illegal Commission Scheme" and obtaining

26  "Sham Policies," without any specific allegations or evidence of contracts or laws requiring

27  any of these applicants or "complicit individuals" to maintain North American's life insurance

28  policies for any minimum time frame or to qualify for the "return of premium feature."  Based

1  on the allegations of the Complaint, it is clear that these are not contractually required by the

2  subject life insurance policies, which North American nevertheless refers to as "Sham

3  Policies."

4      What North American is alleging is analogous to retail stores selling a product as a

5  "loss leader" (i.e., selling a product at a loss in the hope that customers, while in the store to

6  purchase the loss leader, will buy other products on which the seller will then make a profit)

7  and then complaining when customers only buy the loss leader.

8

9                                    III.

10                            LEGAL ARGUMENT

11      A.      Legal Authority

12              1.      Motions Brought Under Federal Rule of Civil Procedure 12(b)(6)

13      A dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) can be based on the

14  lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable

15  legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-534 (9th Cir. 1984).

16  In resolving a Rule 12(b)(6) motion, the court must (1) construe the complaint in the light

17  most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3)

18  determine whether plaintiff can prove any set of facts to support a claim that would merit

19  relief. *Cahill v.Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996).

20      However, courts "are not bound to accept as true a legal conclusion couched as a

21  factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Nor are courts required to

22  accept as true conclusionary allegations or legal characterizations or unreasonable inferences

23  or unwarranted deductions of fact. *In Re Delorean Motor Company,* (6th Cir. 1993) 991 F.2d

24  1236, 1240; *Transfaze Systems, Inc. v. Southern California Edison Company,* (CDCA 1993)

25  F.Supp. 711, 718. As the First Circuit put it, courts need not "swallow the plaintiff's

26  invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic

27  circumlocutions, and the like need not be credited." *Aulson v. Blanchard,* (1st Cir. 1996) 83

28  F.3d 1, 3. Moreover, fraud must be pleaded "with particularity" (Rule 9(b)), and a mere

1 | conclusion need not be accepted as true absent supporting allegations establishing why it was

2 | "fraudulent." *SEC v. Seaboard Corp.,* (9th Cir. 1982) 677 F.2d 1315, 1316.

3 |     The Court may also disregard allegations in the complaint if contradicted by facts

4 | established by reference to documents attached as exhibits to the complaint. *Durning v. First*

5 | *Boston Corp.,* (9th Cir. 1987) 815 F.2d 1265, 1267; *Nishimatsu Construction, LTD. v. Houston*

6 | *National Bank,* (5th Cir. 1975) 515 F.2d 1200, 1206.

7 |         **2.**     **Motions Brought Under Federal Rule of Civil Procedure 12(e)**

8 |     Rule 12(e) of the *Federal Rules of Civil Procedure* provides that a defendant may

9 | move for a more definite statement if the plaintiff's pleading is "so vague or ambiguous that

10 | the party cannot reasonably prepare a response." "[T]he proper test in evaluating a motion

11 | under Rule 12(e) is whether the complaint provides the defendant with a sufficient basis to

12 | frame his responsive pleadings." *Federal Sav. and Loan Ins. Corp. v. Musacchio,* 695 F.

13 | Supp. 1053, 1060 (N.D. Cal. 1988). Factual allegations must be enough to raise a right to

14 | relief above the speculative test. See *5 G. Wright & A. Miller*, Federal Practice and Procedure

15 | § 1216, pp. 235-236 (3d Ed. 2004) ("[T]he pleading must contain something more ... than ... a

16 | statement of facts that merely creates a suspicion [of] a legally cognizable right of action.").

17 | Sufficient factual allegations are required to provided "fair notice" of the nature of the claim

18 | and the grounds on which the claim rests. *Bell Atlantic Corporation v. Twomby*, 127 U.S.

19 | 1955, 1965 (2007).

20 |     **B.**     **Every Cause of Action Should be Dismissed Because There is No**

21 |           **Prohibition Against Advancing Premium Payments and Rebating of**

22 |           **Commissions Is Legal in California Pursuant to Express Statute and Public**

23 |           **Policy**

24 |     The central allegation of each and every cause of action in Plaintiff's Complaint

25 | that Philpot engaged in "paying secret rebates and/or advancing premium payments" lacks

26 | merit because rebating of commissions is not only legal, but actively encouraged in

27 |

28 |

California.  Proposition 103[1] enacted by the people at the November 8, 1988 general election specifically repealed Sections 750, 751 and 752 of the Insurance Code which sections prohibited the rebating of commissions to insureds.

Prior to 1988, these sections read as follows:[2]

The applicable Insurance Code sections read as follows:

Section 750: "An insurer, insurance agent, broker, or solicitor, personally or by any other party, shall not offer or pay, directly or indirectly, as an inducement to insurance on any subject-matter in this State, any rebate of the whole or part of the premium payable on an insurance contract, or of the agent's or broker's commission thereon, and such rebate is an unlawful rebate."

Section 751: "An insurer, or any insurance agent, broker, or solicitor, personally or otherwise, shall not offer or pay, directly or indirectly, as an inducement to enter into an insurance contract, any valuable consideration which is not clearly specified, promised or provided for in the policy, or application for the insurance, and any such consideration not appearing in the policy is an unlawful rebate."

Section 752: "Any person named as the insured in any policy or named as the principal, or obligee, in any surety policy or the agent or representative of any such person who, directly or indirectly, knowingly accepts or receives any unlawful rebate is guilty of a misdemeanor."

---

[1]   See Proposition 103, attached as Exhibit "1" to the Request for Judicial Notice.

[2]   *R.D. Reeder Lathing Co. v. Cypress Insurance Co.* (1970) 3 Cal.App.3d 995 (fn. 1).

1    The purpose behind Proposition 103 as stated in Section 2 of the Proposition is:

2        The purpose of this chapter is to protect consumers from arbitrary

3        insurance rates and practices, to encourage a competitive

4        insurance marketplace, to provide for an accountable insurance

5        commissioner, and to ensure that insurance is fair, available, and

6        affordable for all Californians.

7    See, Section 2 to Proposition 103 attached as Ex. "1" to the Sachs Decl. and ¶ 1 of RFJN.

8        As a result of Proposition 103, subdivision (d) was added to Insurance Code section

9    750.  *Insurance Code* section 750(d) provides:

10        **(d)    Nothing in this section is intended to limit, restrict, or in**

11        **any way apply to, the rebating of commissions by insurance**

12        **agents or brokers, as authorized by Proposition 103, enacted by**

13        **the people at the November 8, 1988, general election**. (Emphasis

14        added.)

15        Thus, California law not only authorizes the rebating of insurance premiums, but

16    the citizens of California specifically repealed the prohibition against rebating in order "to

17    encourage a competitive insurance marketplace."

18    **C.    The California Insurance Commissioner and an Administrative Law**

19    **Decision  Recognize that Life Insurance Rebating is Legal**

20        On the heels of Proposition 103, the California Insurance Commissioner brought an

21    action against several life insurance companies under *Insurance Code* section 790.06 for

22    unfair and deceptive practices as a result of the insurance company's contractually imposed

23    restrictions against commission rebating by California life insurance agents.[3]  In this action,

24    entitled, *In the Matter of Prudential Insurance Company of America, et al.* (See ¶ 2 of RFJN

25

26    [3]    The Administrative Law Judge hearing the action specifically held that a separate hearing was
necessary in order to determine whether the insurance carrier's actions violated *Insurance Code*

27    section 790.03.  Should this matter proceed, this responding defendant intends to file a cross-
complaint seeking a determination whether Plaintiff's conduct in this regard is violative of *Insurance*

28    *Code* section 790.03, *Business and Professions Code* section 17200, et seq., as well as antitrust laws.

1 | and Ex. "2" to Sach Decl.), the Administrative Law Judge ("ALJ") held:

2 |    That the intent of the electorate relating to the issue of rebating
3 |    generally, and to life insurance specifically, cannot be determined
4 |    by looking at material provided to voters is clear.  Nonetheless,
5 |    the repeal of the prohibition against rebating would necessarily
6 |    permit rebating in life insurance, as the prohibition previously set
7 |    forth in section 750 applied broadly to all lines of insurance,
8 |    including life insurance.  The only lines or products for which a
9 |    rebating prohibition remains intact are those for which a separate
10 |    prohibition exists, as in the case of title insurance (sections 12404,
11 |    et seq.), mortgage guaranty insurance (section 12640.14), and
12 |    products sold by reciprocal or interinsurance exchanges (section
13 |    1490).

14 | *Id.* at p. 45.

15 |    The ALJ further held on page 46:

16 |    In reading the initiative it cannot be said that the voters intended
17 |    to do anything other than permit rebating in insurance.  Put
18 |    another way, the plain language of the initiative did nothing more
19 |    than repeal Insurance Code section 1750.

20 |    Although the ALJ held that the narrow confines of *Insurance Code* section 790.06 did
21 | not prevent insurance companies from contractually prohibiting rebating, the ALJ rejected the
22 | insurance companies' argument that rebating would have an adverse impact on their business,
23 | finding that the California life insurance market is generally very competitive. (*Id.* at pp. 51-
24 | 52.) It concluded that the financial impact on Respondents of rebating is not substantial,
25 | stating:

26 |    The evidence did not establish that compelling Respondents to allow
27 |    their agents to rebate would result in insurer insolvency.  At most, it
28 |    may have some minor impact on future company profitability. (*Id.* at

1    p. 52.)

2    The insurance companies also argued that unrestricted agent rebating would have

3    a significant impact on "persistency," i.e., the rate at which life insurance policies remain

4    in effect over time, taking into account death rates and policy lapses. The ALJ rejected

5    Respondents' argument that permitting their independent agencies to rebate would result

6    in lower persistency rates and therefore reduce insurer profitability and result in an

7    impact on solvency, stating:

8    　　　　Because the benefit derived from the rebate of a commission

9    　　　　may be outweighed by other important policyholder

10   　　　　considerations, it is likely that rebating will have little effect

11   　　　　on a company's mature business, life insurance policies

12   　　　　which have been in force for more than five years. . . . The

13   　　　　contention that rebating will lead to wide spread replacement

14   　　　　of polices is not supported by the evidence.

15   　　　　(*Id.* at p. 53.)

16   Although the ALJ noted that there may be some impact on persistency due to

17   rebating on new business, particularly at the time of the payment of the first renewal

18   premium, it noted that this "sticker shock" phenomenon is well known in the life

19   insurance business and that insurers routinely factor into their rates the higher incidence

20   of cancellation or non-renewal at the first year anniversary. So this argument also failed

21   to support the contention that rebating would lead to widespread replacement of policies.

22   (*Id.* at p. 54.)[4]

23   Thus, it is clear that by way of Proposition 103, and the conclusion of the ALJ,

24   that rebating of insurance commissions is legal and beneficial to consumers.

25

26

27   _____

28   [4]    For the benefit of the Court, a New York Times article published on March 26, 1993 with regard to this action is attached to the Sachs Decl. as Ex. "3."

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**D.    Case Law Interpretation also Supports the Conclusion that The Rebating of Life Insurance Commissions is Legal**

**1.    Post-Proposition 103**

The voters of California passed Proposition 103 with the express intention to protect consumers from arbitrary insurance rates and practices, to encourage a competitive insurance marketplace, to provide for an accountable insurance commissioner and to ensure that insurance is fair, available, and affordable for all Californians.  Prop. 103, § 2 "Purpose" (See RFJN ¶ 1 and Ex. "8" to Sachs Decl.) *State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1041.  Further, subdivision (a) of section 8 of Proposition 103, provides that the act "shall be liberally construed and applied in order to fully promote its underlying purposes." (*Id.* at p. 45.)

Lastly, attached as Exhibit "4" to the Declaration of Michael J. Sach is an opinion letter from Elizabeth Tuckwell, staff counsel for the California Department of Insurance, dated March 24, 1999 in which Ms. Tuckwell specifically states that as a result of Proposition 103, insurance rebating is legal in the State of California.  (RFJN ¶ 4.)

Based upon all of the above, it cannot be disputed that the fundamental "wrong" underlying Plaintiff's Complaint, the alleged illegal rebating of insurance commissions, is legal as a matter of California statutory law and is also encouraged by the public policy of Proposition 103.   The first cause of action for unfair trade practices under *California Business & Professions Code* section 17200 et seq., therefore fails as a matter of law because there is no underlying predicate tort to support it.

For the same reasons, the third, fourth, sixth, seventh, eighth, and ninth causes of action fail because they are all based on the same underlying wrong and the same alleged "fraud" asserted in the fourth cause of action, which fails to allege a cause of action for fraud.

1

**E.    The First, Third, Fourth and Sixth Through Ninth Causes of Action**
2
**All Incorporate by Reference the Illegal Rebating Allegations and**
3
**Thus Fail to State a Claim**

4      The same analysis as set forth above justifies the dismissal of the Fourth through

5   Ninth Causes of Action in that each of these causes of action incorporate the same illegal

6   rebating allegations.  In addition, the claims are also based upon conclusory allegations

7   involving unknown "complicit individuals," involved in some "Illegal Commission

8   Scheme," whereby rebates expressly allowed under California law are given.  In

9   addition, North American fails to allege any contractual requirement, or otherwise,

10   requiring Philpot to compel these complicit individuals to maintain their policies for any

11   particular, limited period of time so as to guarantee North American a profit on the sale

12   of its insurance policies.  In any event, as noted above, <u>insurers routinely factor into their</u>

13   <u>rates the higher incidence of cancellation or non-renewal at the first year anniversary.</u>

14   (Ex. "2," *supra* at p. 54.)

15      The fact is that North American effectively seeks a judicial determination that its

16   agents are the guarantors of its profits.  Not only is there a complete absence of

17   contractual obligation for agents to force policyholders to maintain policies, but there is

18   also no legal authority for such a proposition.  Moreoever, North American's attempt to

19   contractually prohibit rebating is void as against public policy.

20      **F.    There is no Cause of Action for Breach of the Covenant of Good Faith**
21      **and Fair Dealing**

22      Plaintiff's third cause of action is for Breach of the Covenant of Good Faith and

23   Fair Dealing.  In addition to the insufficiencies referenced above, this cause of action, as

24   pled, sounds in tort.

25      In paragraph 88, Plaintiff alleges "Defendants, in doing the things herein alleged,

26   acted intentionally, and with malice, oppression and fraud as those terms are defined in

27   California Code of Civil Procedure section 3294, and North American therefore is

28   entitled to an award of exemplary and punitive damages against Defendants in such

1  amount as will adequately punish Defendants and set an example so as to deter them and

2  others from acting as alleged herein." Likewise, the prayer for relief as to the third cause

3  of action seeks exemplary and punitive damages pursuant to California *Civil Code*

4  section 3294.

5       As the California Supreme Court held in the seminal case of *Seaman's Direct Buy*

6  *and Service v. Standard Oil Co.* (1984) 36 Cal.3d 752, 768-771 (overruled on other

7  grounds in *Della Penna v. Toyota Motor Sales, USA, Inc.* (1995) 11 Cal.4th 376), absent

8  a special relationship between the parties, a tort cause of action for breach of the

9  covenant of good faith and fair dealing does not lie. See also, *Gomez v. Volkswagen of*

10  *America* (1985) 169 Cal.App.3d 921, 926-927. No such special relationship exists here,

11  nor has one been alleged. Accordingly, this cause of action should be dismissed.

12       **G.    Plaintiff Has Not Been Damaged**

13       Plaintiff, by its own admission, has not been damaged. In paragraph 13 of the

14  Complaint, Plaintiff alleges that: "The cost of insurance for those products utilized by

15  the Illegal Commission Scheme is shifted to those honest policyholders who pay

16  sufficient premiums to maintain their policies in force and who intend to keep their

17  policies in force as those products have been designed by insurance companies, such as

18  North American."

19       Thus, Plaintiff has admitted that any alleged damages it has suffered is merely

20  passed on by them which means, by necessity, that Plaintiff has suffered no damages.

21       **H.    In the Alternative, A More Definite Statement Should Be Required**

22       If the Court concludes that all or any portion of Plaintiff's Complaint is allowed

23  to stand, then North American should, at the very least, be required to provide a more

24  definite statement in support of its claims of illegal rebating pursuant to F.R.C.P. 12(e).

25  The parties cannot proceed under present set of conclusory facts and legal conclusions

26  that now exist in the Complaint.

27

28

**IV.**

**CONCLUSION**

Plaintiff's Complaint is barred as a matter of law because the rebating of commissions is legal in California. As a result, there is no predicate wrong alleged to support any of Plaintiff's causes of action. In addition, the Complaint is replete with conclusory allegations, missing facts, and legal conclusions. There is no reason to believe that Plaintiff will be able to amend its Complaint founded upon alleged "illegal insurance rebating" because insurance rebating is legal as a matter of California statutory law and public policy. As a result, Defendant, Michael Philpot, respectfully requests that the Court grant this Motion to Dismiss as to all causes of action without leave to amend.

In the alterative, Defendant requests that the Court grant the Motion for a More Definite Statement and require Plaintiff to provide more detailed statement as to the factual basis of its claim of illegal rebating.

Dated: June 13, 2008             Respectfully Submitted,

                                 **CALLAHAN & BLAINE, APLC**


                                 By: s/Michael J. Sachs
                                     Michael J. Sachs
                                 Attorneys for Defendant, MICHAEL L. PHILPOT
                                 email: michael@callahan-law.com

1

## DEMAND FOR JURY TRIAL

2          Defendant, Michael L. Philpot, hereby demands a trial by jury of all issues triable as of

3    right to a jury.

4

5    Dated: June 13, 2008                        Respectfully Submitted,

6                                                 **CALLAHAN & BLAINE, APLC**

7

8                                                 By: s/Michael J. Sachs
                                                        Michael J. Sachs
9                                                 Attorneys for Defendant, MICHAEL L. PHILPOT
                                                  email: michael@callahan-law.co

10

11

12
     G:\2895\2895-02\Pleadings\Motion to Dismiss.wpd
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2

       I am a resident of the State of California, over the age of eighteen years, and not a
3  party to the within action.  I am employed in the office of a member of the bar of this Court at
whose direction service was made.  My business address is Callahan & Blaine, APLC, 3 Hutton
4  Centre, Ninth Floor, Santa Ana, California 92707.

5           On June 13, 2008, I electronically filed the following document with the Clerk of
the Court using the CM/ECF system, which sent electronic notification of such filing to all other
6  parties appearing on the docket sheet as listed below.

7     **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM [F.R.C.P. 12(B)(6)]
8     OR, ALTERNATIVELY, MOTION FOR A MORE DEFINITE STATEMENT
[F.R.C.P. 12(E)];AND DEMAND FOR JURY TRIAL**

9

10     Miles Michael Cooley         mcooley@reedsmith.com

     Raymond A. Greenberg      raylaw43@msn.com
11

     M. Andrew Schneider        aschneider@tahlaw.com
12

13       I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.  Executed on June 13, 2008 at Santa Ana, California.
14

15

16  Jane M. Jones
email: jjones@callahan-law.com

17

G:\2895\2895-02\POS efiling.wpd
18

19

20

21

22

23

24

25

26

27

28