1  Robert D. Phillips, Jr. (SBN 82639)
   rphillips@reedsmith.com
2  Miles M. Cooley (SBN 206783)
   mcooley@reedsmith.com
3  Kathy J. Huang (SBN 240677)
   khuang@reedsmith.com
4  REED SMITH LLP
   355 South Grand Avenue, Suite 2900
5  Los Angeles, CA  90071-1514
   Telephone:  213.457.8000
6  Facsimile:   213.457.8080

7  Attorneys for Plaintiff
   North American Company For Life and
8  Health Insurance

9            UNITED STATES DISTRICT COURT

10          SOUTHERN DISTRICT OF CALIFORNIA

11

12  NORTH AMERICAN COMPANY FOR          No.: 08 CV 0270 BEN NLS
    LIFE AND HEALTH INSURANCE,
13                                      **PLAINTIFF'S MEMORANDUM OF**
                   Plaintiff,           **POINTS AND AUTHORITIES IN**
14                                      **OPPOSITION TO DEFENDANT**
            vs.                         **MICHAEL L. PHILPOT'S MOTION**
15                                      **TO DISMISS [F.R.C.P. 12(b)(6)]**
    MICHAEL L. PHILPOT, an individual,  **AND MOTION FOR A MORE**
16  VIRGINIA B. HIRSH, an individual,   **DEFINITE STATEMENT [F.R.C.P.**
    JOHN B. KUYKENDALL, an individual,  **12(e)]**
17  RENE ALEJANDRO LACAPE, an
    individual, C. RICHIE MCNAMEE, an   Date:        July 21, 2008
18  individual and HECTOR PAEZ VALDEZ,  Time:        10:00 a.m.
    an individual,                      Courtroom:   3
19
                   Defendants.          Complaint Filed: February 13, 2008
20                                      Trial Date: None Set

21

22

23

24

25

26

27

28

(08cv0270)

OPPOSITION TO DEFENDANT PHILPOT'S MOTION TO DISMISS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................. 1

II. LEGAL ARGUMENT ......................................................................... 3

    A.    Standard Governing Motions to Dismiss .................................... 3

    B.    Proposition 103 and California Insurance Code Section 750(d) Provide No Basis For Dismissal Of North American's Complaint ................................................................................. 4

        1.    The legality of commission rebating is immaterial, because North American properly alleges that Philpot engaged in unlawful conduct. ............................................ 4

        2.    Philpot cannot use Proposition 103 as a shield against liability when his wrongful conduct, as alleged in the complaint, contravenes the public policy and intent behind Proposition 103 ................................................ 6

    C.    Philpot Expressly Agreed Not To Engage In Rebating And Thus, North American Has Sufficiently Stated Claims For Breach Of Contract (Second Claim for Relief) and Breach of the Covenant of Good Faith and Fair Dealing (Third Claim for Relief) ...................................................................................... 8

    D.    North American's Complaint Alleges Sufficient Facts to Support Its First, Fourth, Six, Seventh, Eighth And Ninth Claims for Relief .................................................................... 11

        1.    North American has pled a valid unfair competition claim. ........................................................................... 11

        2.    North American's fraud claim is proper. ...................... 12

        3.    North American alleges a valid declaratory relief claim. .............. 12

        4.    North American's unjust enrichment claim is properly pled. ................................................................................ 13

        5.    North American alleges a valid RICO claim. ................ 13

    E.    North American Suffered Significant Damages Due To The Illegal Commission Scheme, And Adequately Pleads These Damages In Its Complaint ........................................................ 14

    F.    Because North American's Claims Are Neither Vague Or Ambiguous, Philpot's Motion For A More Definite Statement Should Be Denied ..................................................................... 15

III. CONCLUSION ................................................................................. 16

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF AUTHORITIES

Page

## CASES

*Balistreri v. Pacifica Police Department,*
  901 F.2d 696 (9th Cir. 1990) ...................................................................3

*Calfarms Insurance Co. v. Deukmejian,*
  48 Cal. 3d 805 (1989) ............................................................................7

*Carma Developers (California), Inc. v. Marathon Development California, Inc.,*
  2 Cal. 4th 342 (1992) ..........................................................................10

*Cel-Tech Commc'n, Inc. v. Los Angeles Cellular Telegraph Co.,*
  20 Cal. 4th 163 (1999) ........................................................................12

*Gilligan v. Jamco Develop. Corp.,*
  108 F.3d 246 (9th Cir. 1997) .................................................................3

*Graehling v. Village of Lombard, Ill.,*
  58 F.3d 295 (7th Cir. 1995) ...................................................................3

*Hartford Fire Insurance Co. v. Cal.,*
  509 U.S. 764 (1993) ..............................................................................3

*Knevelbaard Dairies v. Kraft Foods, Inc.,*
  232 F.3d 979 (9th Cir. 2000) .............................................................3, 8

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,*
  507 U.S. 163 (1993) ..............................................................................3

*Lee v. City of Los Angeles,*
  250 F.3d 668 (9th Cir. 2001) .................................................................4

*Pareto v. F.D.I.C.,*
  139 F.3d 696 (9th Cir. 1998) .............................................................3, 6

*Poseidon Development, Inc. v. Woodland Lane Estates, LLC,*
  152 Cal. App. 4th 1106 (2007) .............................................................9

*Sagan v. Apple Computer, Inc.,*
  874 F. Supp. 1072 (C.D. Cal. 1994) .................................................15, 16

*Sedima, S.P.R.L. v. Imrex Co., Inc.,*
  473 U.S. 479 (1985) ............................................................................14

*Stansfield v. Starkey,*
  220 Cal. App. 3d 59 (1990) .............................................................12, 13

*True v. America Honda Motor Co.,*
  520 F. Supp. 2d 1175 (C.D. Cal. 2007) ................................................16

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– ii –

*United Energy Owners Committee, Inc. v. U.S. Energy Management System, Inc.*,
    837 F.2d 356 (9th Cir. 1988) ...........................................................................14, 15

*United States v. Redwood City*,
    640 F.2d 963 (9th Cir. 1981) (a 12(b)(6) ............................................................3

*United States v. White*,
    893 F. Supp. 1423 (C.D. Cal. 1995) ...................................................................3

## STATUTES

18 U.S.C. § 1962(c) ...........................................................................................13

Cal. Bus. & Prof. Code 17200 .........................................................................11

Cal. Ins. Code § 750(d) ...................................................................................4, 8

Fed. R. Civ. Proc. Rule 12(b)(6) .......................................................2, 3, 6, 15, 16

Fed. R. Civ. Proc. Rule 12(e) ...............................................................2, 15, 16

## OTHER AUTHORITIES

Prop. 103 ....................................................................................2, 4, 6, 7, 8

Harvey Rosenfeld, *Auto Insurance: Crisis and Reform*, 29 U. Mem. L. Rev. 69,
    100 (1998) ...........................................................................................7

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

OPPOSITION TO DEFENDANT PHILPOT'S MOTION TO DISMISS

# I.

# **INTRODUCTION**

In his Motion to Dismiss plaintiff North American Company for Life and Health Insurance's ("North American") claims against him, defendant Michael Philpot ("Philpot") does not dispute that he engaged in the conduct North American described in the complaint. Instead, he argues that his conduct is legal because commission rebating is legal in California. However, the sole issue to be decided on this Motion is the sufficiency of the allegations in North American's complaint, which plainly and properly alleges conduct by Philpot and his confederates that is far more than simple commission rebating. The allegations of the complaint easily support claims for unfair competition, breach of contract, bad faith, fraud, negligence, unjust enrichment, violation of RICO, declaratory relief and accounting.

North American's allegations, generally stated, are as follows:

North American contracted with Philpot and the other defendants to sell life insurance products to customers with a legitimate interest in the products and a desire to provide life insurance protection for their beneficiaries. Instead, from at least 2004 through May 2007, Philpot and his cohorts, using the Michael Philpot agency as a vehicle, instead breached their contracts with North American by participating in an illegal and fraudulent scheme solely designed to extract upfront commission and bonus payments from North American. The scheme involved Philpot and his agents inducing individuals to apply for life insurance policies by making secret payments and/or paying the policy premiums for such policies ("Sham Policies") when they knew full well that the "policyholders" had no good faith intention to maintain their policies. Defendants hid their activities from North American and fraudulently induced North American to pay them commissions by leading it to believe that these were genuine life insurance transactions in which policyholders were paying their own money for their own life insurance needs. In fact, defendants' scheme was designed

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(08cv0270)

OPPOSITION TO DEFENDANT PHILPOT'S MOTION TO DISMISS

solely to generate commissions through this secret scheme, and none of their "clients" had an intent to maintain the policies. Simply put, the policyholders were merely a vehicle for the agents' scheme to take money from North American on false pretenses.

North American, to its substantial financial detriment, issued the Sham Policies and paid Philpot and other agents in the Michael Philpot agency tens of millions of dollars in sales commissions and unearned bonuses. The Sham Policies then lapsed as Philpot intended, well after he and his cohorts had deceived North American into paying the maximum amount of commissions.

Philpot's conduct, referred to as the "Illegal Commission Scheme" in the complaint, is clearly actionable, notwithstanding Philpot's assertions regarding the legality of commission rebating. Philpot cannot avoid the consequences of his malfeasance simply by calling it legal commission rebating because that practice is categorically different from the wrongdoing North American alleges he perpetrated by way of the Illegal Commission Scheme.

Moreover, Philpot's attempt to use Proposition 103 as a shield also fails because Proposition 103 clearly was not intended to protect rogue insurance agents who have engaged in improper sales schemes and who have conspired to have life insurance policies issued in direct contravention of the terms of their agreements with North American.[1] In any event, Proposition 103 does not prohibit contracting parties from agreeing to refrain from rebating as Philpot expressly agreed to do. Furthermore, because North American's claims are all based upon well-pleaded allegations of Philpot's malfeasance, Philpot's argument that there is no underlying wrong to support these claims also must fail. Lastly, because North American's complaint alleges definite and unambiguous claims on its face, the Court should reject Philpot's alternative motion for a more definite statement under Rule 12(e).

---

[1] It should also be noted that Proposition 103 contains no language that mandates its application to life insurance and that Philpot's position is neither supported by any applicable case law nor an objective reading of the proposition.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

OPPOSITION TO DEFENDANT PHILPOT'S MOTION TO DISMISS

1    Because North American has properly alleged facts sufficient to state all of its

2    claims, and because Philpot utterly fails to establish any legal basis for dismissal of

3    these claims, his Motion should be denied.[2]

## II.

## LEGAL ARGUMENT

**A.    Standard Governing Motions to Dismiss.**

In reviewing a 12(b)(6) motion to dismiss, the court must accept as true all

material allegations in the complaint, as well as reasonable inferences to be drawn

from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998); *see also*

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S.

163, 164 (1993); *United States v. White*, 893 F. Supp. 1423, 1428 (C.D. Cal. 1995).

The court should not dismiss a claim under Rule 12(b)(6) unless "it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." *Hartford Fire Ins. Co. v. Cal.*, 509 U.S. 764, 811 (1993);

*Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 984 (9th Cir. 2000).

Moreover, "[a] motion to dismiss for failure to state a claim is viewed with

disfavor and is rarely granted." *Gilligan v. Jamco Develop. Corp.*, 108 F.3d 246, 249

(9th Cir. 1997) (the federal notice pleading standard establishes "a powerful

presumption against rejecting pleadings for failure to state a claim."). A Rule 12(b)(6)

dismissal is proper only where there is either a "lack of a cognizable legal theory" or

"the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v.*

*Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *United States v. Redwood*

*City*, 640 F.2d 963, 966 (9th Cir. 1981) (a 12(b)(6) dismissal is proper only in

"extraordinary" cases); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th

---

[2] Defendants Rene Alejandro Lacape and Virginia B. Hirsch have filed joinders to
Philpot's Motion to Dismiss thus, this Opposition is applicable to them as well.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

OPPOSITION TO DEFENDANT PHILPOT'S MOTION TO DISMISS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  Cir. 1995) ("[a] suit should not be dismissed if it is possible to hypothesize facts,

2  consistent with the complaint, that would make out a claim"). The "issue is not

3  whether [plaintiff] will ultimately prevail, but whether he is entitled to offer evidence

4  to support his claims." *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir.

5  2001). Here, North American has more than sufficiently alleged facts to support all of

6  its causes of action.

7  **B.    Proposition 103 and California Insurance Code Section 750(d) Provide No**

8  **Basis For Dismissal Of North American's Complaint.**

9

10  **1.    The legality of commission rebating is immaterial, because North**

11  **American properly alleges that Philpot engaged in unlawful conduct.**

12  Philpot premises his entire Motion on the argument that post-Proposition 103,

13  commission rebating by insurance agents in California is no longer illegal and he has

14  therefore committed no underlying wrong for which he can be held liable. (*See*

15  Opposition at 6-11.) This argument ignores the allegations in North American's

16  complaint, as well as twisting them beyond recognition. North American's complaint

17  sufficiently and properly alleges wrongful acts beyond simple "commission rebating".

18  "Commission rebating" involves an insurance agent offering a rebate such that

19  the premium paid by the policyholder does not reflect the agent's commission, and as

20  a result, the policyholder pays a lower premium for the policy. North American's

21  clearly alleges something entirely different:

22  • Philpot and his agents conceived and perpetuated the Illegal Commission

23     Scheme, a sophisticated plot to deceive North American into paying them

24     tens of millions of dollars in undeserved and unearned commissions and

25     bonuses (Complaint, ¶ 4);

26  • The Illegal Commission Scheme involved "offering [] and paying to

27     certain complicit individuals, posing as legitimate potential insureds,

28     secret rebates and other monetary incentives, including advancing

—4—                                                    (08cv0270)

insurance premiums due North American, in exchange for these individuals applying for [universal life] policies with North American . . .” (Complaint, ¶ 36);

- Further, the Illegal Commission Scheme, as alleged, was underhanded and intended to deceive North American because Philpot's actions directly contravene the proscription in Distributor Application and Agreements (the "Philpot RM Agreement" and the "Philpot MO Agreement") in which Philpot agreed that he would "[n]ot to pay any premium personally, or rebate premium to any policyholder," (Complaint, ¶¶ 20, 27-32);

- Philpot and his fellow agents helped applicants apply for the Sham Policies "without any good faith intention on the part of Defendants or the complicit individuals that the policies would actually be maintained or that applicable premiums would be paid . . ." (Complaint, ¶ 37);

- "[A] single premium [was] paid for each such policy in an amount equal to the minimum premium necessary for Defendants to earn the maximum commission on the policy" but which constituted an amount "insufficient to continue [each] policy in force for more than a few years." (Complaint, ¶ 38);

- Philpot actively concealed the Illegal Commission Scheme over a period of several years and hundreds of transactions, with the goal of deceiving North American and misleading it as to the true fact of the Sham Policies and larger Illegal Commission Scheme, all done with the intent to induce North American to issue the Sham Policies, pay the undeserved, ill-gotten upfront commissions to Defendants, and causing North American to incur underwriting costs, in reliance thereon. (Complaint, ¶¶ 90-93); and

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

OPPOSITION TO DEFENDANT PHILPOT'S MOTION TO DISMISS

- Due to Philpot's Illegal Commission Scheme, North American "pa[id] millions in undeserved commissions to the Defendants and bonuses to their uplines, and incurr[ed] underwriting costs thereon, by reason of which North American has suffered millions of dollars in losses. . ." (Complaint, ¶ 95)

North American's allegations of Philpot's conduct go well beyond mere commission rebating.  Philpot is alleged, in specific detail, to have perpetrated the Illegal Commission Scheme.  Philpot cannot avoid the consequences of his malfeasance simply by cloaking it in the guise of commission rebating because that practice is categorically different from the wrongful acts North American alleges he committed.  Nor can Philpot ignore North American's actual allegations, which for the purposes of a 12(b)(6) motion must be assumed to be true. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).  Thus, because North American properly alleges that Philpot engaged in unlawful conduct supporting North American's claims for unfair competition, breach of contract, bad faith, fraud, negligence, unjust enrichment, violation of RICO, declaratory relief and accounting, the supposed legality of commission rebating offers him no protection, and the Court should deny Philpot's Motion.

   **2.    Philpot cannot use Proposition 103 as a shield against liability when his wrongful conduct, as alleged in the complaint, contravenes the public policy and intent behind Proposition 103.**

In support of his argument that what North American alleges he did amounted to legal rebating, Philpot grossly misconstrues Proposition 103, claiming that it sanctions his actions.  It does not.  Proposition 103 was not intended or enacted to protect or encourage the kind of improper acts that North American alleges Philpot and his agents engaged in here.  Certainly, nothing in Proposition 103 can be read to

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(08cv0270)

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    sanction false promises by agents to refrain from certain sales activities that the
2    insurer chooses to prohibit.

3          As Philpot acknowledges in his Opposition, "[t]he voters of California passed
4    Proposition 103 with the express intention to protect consumers from arbitrary
5    insurance rates and practices, to encourage a competitive insurance marketplace, to
6    provide for an accountable insurance commissioner and ***to ensure that insurance is***
7    ***fair, available and affordable for all Californians***." (Opposition at 11 (*quoting* Prop.
8    § 103, § 2 ("Purpose")); *see also Calfarms Ins. Co. v. Deukmejian*, 48 Cal. 3d 805,
9    812-813 (1989) (the California Supreme Court recognized that "[enormous] increases
10   in the cost of insurance have made it both unaffordable and unavailable to millions of
11   Californians," and that Proposition 103's stated purpose was to ensure that
12   *"insurance is fair, available, and affordable for all Californians."*) (emphasis
13   added).)

14         Of course, to the extent that insurance agents' rebating of commissions lowers
15   the cost of insurance for policyholders, it is consistent with the stated purpose of
16   Proposition 103.  Here, however, North American alleges that Philpot's scheme
17   actually "deprives honest consumers of fairly priced life insurance products by
18   transferring the expenses associated with underwriting and issuing such products
19   thereby causing honest consumes to pay a higher price for the product than they
20   [normally] would have . . ." (Complaint, ¶ 13.)   Instead of benefiting the
21   policyholders, Philpot's Illegal Commission Scheme drives up the cost of insurance
22   for "honest policy holders who pay sufficient premiums to maintain their policies in
23   force and who intend to keep their policies in force." (*Id.*)  This end result directly
24   contravenes the public policy behind Proposition 103. (*See* Harvey Rosenfeld, *Auto*
25   *Insurance: Crisis and Reform*, 29 U. Mem. L. Rev. 69, 100 (1998) ("[Proposition 103]
26   … sought to impose regulation and create a more competitive and fair marketplace for
27   insurance in California.") (author of the ballot initiative).)

28

OPPOSITION TO DEFENDANT PHILPOT'S MOTION TO DISMISS

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1         The purpose behind Proposition 103 ***had nothing to do with*** allowing insurance

2   agents like Philpot to gain undeserved commissions and bonuses through an insurance

3   policy sales scam, as North American alleges in the Complaint, and drive up the cost

4   of insurance for policyholders. (Complaint, ¶¶ 5, 6, and 13.) Because the clear

5   purpose of Proposition 103 was to foster competition for the benefit of consumers,

6   and to increase the affordability of particular types of insurance for consumers (*Id.*),

7   the pro-consumer, pro-competition Proposition 103 in no way sanctions the

8   malfeasance Philpot is alleged to have perpetrated. In ruling on a 12(b)(6) motion, the

9   court must presume all factual allegations of the pleading are true, and draw all

10  reasonable inferences in favor of the nonmoving party. *Knevelbaard Dairies*, 232

11  F.3d at 984. Accepting North American's allegations of Philpot's wrongful conduct

12  as true for purposes of this Motion, Proposition 103 is wholly unavailing as a defense

13  to North American's claims, or for legitimizing Philpot's wrongful acts, or for

14  shielding Philpot from liability.

15

16  **C.     Philpot Expressly Agreed Not To Engage In Rebating And Thus, North**

17         **American Has Sufficiently Stated Claims For Breach Of Contract (Second**

18         **Claim for Relief) and Breach of the Covenant of Good Faith and Fair**

19         **Dealing (Third Claim for Relief).**

20

21        Even assuming Proposition 103 permitted the Illegal Commission Scheme

22  alleged by North American (which, as discussed above, it does not), there would still

23  be no basis to dismiss North American's breach of contract claim. There is nothing in

24  Insurance Code Section 750(d) or in Proposition 103 prohibiting contracting parties

25  from agreeing to limit or even prohibit the act of rebating.[3] Accordingly, Philpot's

26  ───────────────

27  3 Notably, the non-precedential Administrative Law Judge opinion Philpot relies on,
    *In the Matter of Prudential Insurance Company of America, et al.*, acknowledges
    North American's right to contract against rebating. The Administrative Law Judge

28  determined in that proceeding that "[t]here is nothing in Proposition 103 which states

1  argument regarding the legality of rebating commissions does not extricate him from

2  his contractual promise to North American that he would not engage in rebating.

3  (Complaint, ¶¶ 20(e), 21(e), 29, 34.)

4       A plaintiff seeking to recover under a breach of contract theory must allege the

5  existence of an enforceable contract, plaintiff's performance of the contract, the

6  defendant's breach, and resulting damage to the plaintiff.  *See Poseidon Dev., Inc. v.*

7  *Woodland Lane Estates, LLC*, 152 Cal. App. 4th 1106, 1112 (2007).  Here, North

8  American alleges that Defendant entered into two binding contracts with North

9  American, the "Philpot RM Agreement" and the "Philpot MO Agreement," in which

10  he agreed (on behalf of himself and the Michael Philpot Agency) that he would "[n]ot

11  pay any premium personally, or rebate premium to any policyholder (Section 3(b))."

12  (Complaint, ¶¶ 20(e) and 21(e)).  In violation of his promise, North American alleges

13  that Philpot perpetrated the Illegal Commission Scheme, resulting in significant

14  damages to North American.  (Complaint, ¶¶ 48, 65, 82 and 87.)  Because North

15  American has adequately alleged a claim for breach of contract based upon Philpot's

16  failure to comply with his contractual promise not to rebate commissions, there is

17  simply no basis for the dismissal of this claim.

18       In addition, North American has adequately alleged its cause of action for

19  Philpot's breach of the implied covenant of good faith and fair dealing.  Philpot argues

20  that North American's claim for the breach of the implied covenant, "… as pled,

21  sounds in tort."  (Opposition at 12.)  Again, Philpot ignores the complaint's actual

22  allegations.  North American alleges that its implied covenant claim is based upon its

23  contracts with Philpot (the "Philpot RM Agreement" and the "Philpot MO

24  either directly or indirectly that the purpose of repealing section 750 was to allow
agents, over the objection of their principal, to discount their charges by rebating . . .

25  [Proposition 103] does not address the elimination of insurer restrictions on
commission rebating," and "the practices of [insurers] in refusing to allow their agents

26  to engage in commission rebating and declining to utilize the services of agents who

27  engage in commission rebating do not violate any existing law or established public
policy of the State of California."  (RJN, Exhibit 2, at 47, 57.)

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(08cv0270)

OPPOSITION TO DEFENDANT PHILPOT'S MOTION TO DISMISS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    Agreement"), and Philpot's breach of those contracts.  (Complaint, ¶¶ 84 and 85.)

2    North American alleges that "[i]mplied in the Defendants' Agreements and the

3    Philpot Compliance Manual was a covenant by Defendants that they would act in

4    good faith and deal fairly with North American, act solely for benefit of North

5    American in matters covered by the Defendants' Agreements and Philpot's

6    Compliance Manual, and to keep North American informed on all matters which may

7    come to its attention pertaining to the subject matter of the Defendants' agreements

8    and Philpot's Compliance Manual."  (Complaint, ¶ 84.)  Further, North American

9    alleged that "Defendants breached that covenant by failing to deal in good faith with

10   North American by initiating, participating in and perpetuating the Illegal

11   Commission Scheme."  (Complaint, ¶ 85.)

12       As the California Supreme Court has observed, "It is universally recognized the

13   scope of conduct prohibited by the covenant of good faith and fair dealing is

14   circumscribed by the purposes and express terms of the contract."  *Carma Developers*

15   *(Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373 (1992).  As North

16   American alleges, Philpot contracted to "[n]ot pay any premium personally, or rebate

17   premium to any policyholder (Section 3(b))."  (Complaint, ¶¶ 20(e) and 21(e)).  By

18   perpetrating the Illegal Commission Scheme and signing "complicit individuals" up

19   for "sham policies," Philpot acted against the express promises of its contracts with

20   North American and violated the implied covenant of good faith and fair dealing that

21   is read into contracts to give meaning to the spirit of the bargain.  *Carma*, 2 Cal. 4th at

22   373 ("The implied covenant is read into agreements to protect the express promises of

23   the agreement.").

24       In sum, North American has alleged valid claims for both breach of contract

25   and for breach of the implied covenant of good faith and fair dealing inherent in the

26   contracts Philpot breached.

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**D.    North American's Complaint Alleges Sufficient Facts to Support Its First, Fourth, Six, Seventh, Eighth And Ninth Claims for Relief.**

Philpot contends that because "the alleged illegal rebating of insurance commissions, is legal as a matter of California statutory law," North American's first, fourth,[4] six, seventh, eighth, and ninth claims for relief fail "because they are all based on the same underlying wrong." (Opposition, ¶¶ 11 and 12.) Philpot's reliance on the purported legality of commission rebating again fails. As explained above, the fundamental "wrong" underlying North American's complaint is not the mere rebating of commissions, but rather, the Illegal Commission Scheme, which involves "Defendants' use of secret rebates, unearned discounts, the advancement of premium payments and other financial incentives to complicit applicants for life insurance policies, who never intended to maintain such policies as they were designed or as was required, in order to obtain from North American and other insurance companies unearned commissions and bonuses." (Complaint, ¶ 56.) These allegations are more than sufficient to support North American's claims for unfair competition, fraud, declaratory relief, unjust enrichment and accounting.

**1.    North American has pled a valid unfair competition claim.**

North American has adequately pled a violation of the Unfair Competition Law ("UCL") (First Claim for Relief) because California Business and Professions Code section 17200 proscribes "unfair" or "fraudulent" business practices which North American has alleged that the Illegal Commission Scheme constitutes. (Complaint, ¶¶ 56-58.) As the California Supreme Court has held: "The [UCL] does more than just borrow [unlawful acts] . . . Because Business & Professions Code § 17200 is written in the disjunctive, it establishes three varieties of unfair competition – acts or practices

---

[4] Because North American has adequately pled its claim for negligence (Fifth Claim for Relief), which Philpot does not contest, there is no need to address the propriety of this claim herein.

1  which are unlawful, or unfair, or fraudulent.  In other words, a practice is prohibited as

2  'unfair' or 'deceptive' even if not 'unlawful' and vice versa." *Cel-Tech Commc'n,*

3  *Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Accordingly,

4  Philpot's argument that Proposition 103 made commission rebating lawful does not,

5  as a matter of law, preclude him from liability under the UCL.

6      **2.    North American's fraud claim is proper.**

7      North American has also adequately pled a fraud claim (Fourth Claim for

8  Relief) which requires allegations of a (1) misrepresentation, (2) of material fact, (3)

9  with knowledge of its falsity, (4) intent to defraud, (5) justifiable reliance, and (6)

10  damages resulting from the justifiable reliance.  *Stansfield v. Starkey*, 220 Cal. App.

11  3d 59, 72-73 (1990).  North American alleged that Philpot "failed to reveal and

12  suppressed the material fact of the Illegal Commission Scheme which was known to

13  Defendants at all times mentioned herein" and that the "failure to disclose and

14  suppression of [the] Illegal Commission Scheme was likely to mislead North

15  American and did in fact mislead North American in light of Defendants' duty to

16  inform North American" into believing that it was fully informed of the "material

17  circumstances surrounding" the universal life applications submitted by Philpot and

18  his agents.  (Complaint, ¶¶ 91-93.)  Additionally, North American alleged that "[a]s a

19  proximate result of the fraudulent conduct of Defendants . . . North American was

20  fraudulently induced into issuing the Sham Policies, paying the underserved

21  commissions to the Defendants and bonuses to their uplines, and incurring

22  underwriting costs thereon, by reason of which North American has suffered millions

23  of dollars in losses."  (Complaint, ¶ 95.)  On their face, North American's allegations

24  state a claim for fraud against Philpot and his confederates.

25      **3.    North American alleges a valid declaratory relief claim.**

26      Philpot's assertion that North American seeks, through its lawsuit, a judicial

27  determination that its agents are the guarantors of its profits is absurd.  (Opposition at

28  12.)  As the complaint makes plain, North American seeks a judicial declaration

OPPOSITION TO DEFENDANT PHILPOT'S MOTION TO DISMISS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   (Eighth Claim for Relief) by this Court that "Defendants are liable for the damages

2   suffered by North American due to the Illegal Commission Scheme." (Complaint, ¶

3   121.)  Whether there is "any contractual requirement, or otherwise, requiring Philpot

4   to compel these complicit individuals to maintain their policies for any particular,

5   limited period of time so as to guarantee North American a profit on the sale of its

6   insurance policies," is a red-herring, one that again tries to sidestep what North

7   American actually alleges in its complaint.  North American's claims have nothing to

8   do with any agent guarantying a profit on each policy.  Rather, North American's

9   claims are grounded in the fraudulent rigging of each insurance transaction from its

10  inception such that each of the Sham Policies would be in force just long enough for

11  Philpot and his cohorts to secure maximum commissions, with the knowledge at the

12  outset that North American would make no profit. (Complaint, ¶ 38.)  Indeed, North

13  American would not have issued the Sham Policies had it known of Philpot's true

14  intentions, and the complaint properly alleges North American's justifiable, but

15  unfortunate, reliance on Philpot's misrepresentations.  (Complaint, ¶¶ 39, 40, 94.)

16      **4.    North American's unjust enrichment claim is properly pled.**

17      North American's unjust enrichment (Sixth Claim for Relief) and accounting

18  (Ninth Claim for Relief) claims are based on the allegations that Philpot and his agents

19  have unjustly benefited from their Illegal Commission Scheme through the

20  procurement of commissions and bonuses they did not legally earn.  (Complaint, ¶¶

21  102-104; 122-124.)  As a result of Philpot's wrongful acts, North American seeks a

22  disgorgement of his ill-gotten profits, which cannot be ascertained without an

23  accounting.  (*Id.*)

24      **5.    North American alleges a valid RICO claim.**

25      Lastly, North American has adequately pled a RICO claim (Seventh Claim for

26  Relief) (which is also explained in detail in its RICO Statement, filed on February 13,

27  2008)).  A violation of 18 U.S.C. § 1962(c) requires allegations of: "(1) conduct (2) of

28  an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v.*

1  *Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). North American has alleged an ongoing

2  pattern of racketeering activity "through Defendants' use of the Michael Philpot

3  Agency enterprise as a mechanism to perpetuate the Illegal Commission Scheme to

4  obtain millions of dollars in underserved and unearned commissions and bonuses."

5  (Complaint, ¶ 109.) The conduct involves "offering and paying secret rebates and/or

6  unearned discounts and/or advancing premium payments . . . to complicit individuals

7  in exchange for such individuals applying for life insurance policies from North

8  American . . . without any good faith intention of actually maintaining these policies

9  or paying the premiums for them." (*Id.*) North American also alleges that Philpot

10  uses instrumentalities of interstate commerce, "specifically interstate wire and mail,"

11  to facilitate racketeering activity. (*Id.*) Because predicate acts that are part of a single

12  fraudulent scheme can establish a pattern of racketeering activity (*see United Energy*

13  *Owners Comm., Inc. v. U.S. Energy Mgmt. Sys., Inc.*, 837 F.2d 356, 360-61 (9th Cir.

14  1988)) and that is precisely what North American has alleged here, no basis exists to

15  dismiss North American's RICO claim.

16

17  **E.    North American Suffered Significant Damages Due To The Illegal**

18  **Commission Scheme, And Adequately Pleads These Damages In Its**

19  **Complaint.**

20

21  Grasping at straws, Philpot seizes on North American's allegation that the

22  Illegal Commission Scheme and the early lapsing policies it precipitated affected the

23  cost of insurance for honest policyholders, and argues that this somehow means that

24  North American has not suffered any damages. This claim is patently ridiculous.

25  North American suffered significant damages due to Philpot's Illegal Commission

26  Scheme which caused North American to pay millions in commissions to agents who

27  were deliberately breaching their promises to North American by selling "free life

28  insurance" to policyholders who had no intention of ever paying any premiums and

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

OPPOSITION TO DEFENDANT PHILPOT'S MOTION TO DISMISS

1   never intended to maintain the coverage past the time covered by the initial premium

2   "advanced" by the defendant agents.

3       In any event, the allegations in North American's complaint must be taken as

4   true for purposes of a 12(b)(6) motion to dismiss: (1) North American alleged that it

5   lost over $24 million in commissions and bonuses paid to Defendants and the Michael

6   Philpot Agency between 2004 and 2007, in addition to incurring significant

7   underwriting costs. (Complaint, ¶¶ 47-50); and (2) North American alleged that it

8   paid Defendants and the Michael Philpot agency approximately $15 million in

9   commissions and bonuses for policies currently in-force, that will likely lapse shortly

10  in the pattern of past policies born of Philpot's Illegal Commission Scheme.

11  (Complaint, ¶ 50). Philpot's spurious arguments notwithstanding, North American

12  has more than sufficiently stated valid and cognizable claims for relief that will entitle

13  it to substantial damages.

14

15  **F.    Because North American's Claims Are Neither Vague Or Ambiguous,**

16      **Philpot's Motion For A More Definite Statement Should Be Denied.**

17

18      In an apparent "if all else fails" gambit, Philpot has moved for an order

19  requiring that North American provide a more definite statement "in support of its

20  claims of illegal rebating," under Rule 12(e). (Opposition at 13.) Specifically, Philpot

21  contends that "[t]he parties cannot proceed under the present set of conclusory facts

22  and legal conclusions that now exist in the Complaint." (*Id.*) Like Philpot's Motion

23  to Dismiss, this alternative motion lacks merit and should be denied.

24      A Rule 12(e) motion for more definite statement is only proper where the

25  complaint "is so vague or ambiguous that a party cannot reasonably be required to

26  frame a responsive pleading[.]" Fed. R. Civ. Proc. Rule 12(e); *Sagan v. Apple*

27  *Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994) (Rule 12(e) should be

28  denied unless "the complaint is so indefinite that the defendant cannot ascertain the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 15 –

1   nature of the claim being asserted."); *see also True v. Am. Honda Motor Co.*, 520 F.

2   Supp. 2d 1175, 1183 (C.D. Cal. 2007) (denying 12(e) motion where complaint gives

3   fair notice of the basis for plaintiff's claims). "Motions for a more definite statement

4   are viewed with disfavor and are rarely granted because of the minimal pleading

5   requirements of the Federal Rules. Parties are expected to use discovery, not the

6   pleadings, to learn the specifics of the claims being asserted." *Sagan*, 874 F. Supp. 2d

7   at 1183 (citations omitted). On its face North American's complaint is neither

8   unintelligible nor indefinite, and the nature of the North American's claims against

9   Philpot is easily ascertained. North American's allegations regarding Philpot's

10  wrongful conduct, and specifically, the facts relating to his participation in the Illegal

11  Commission Scheme, are set forth in detail. There is simply no valid basis to grant

12  Philpot's motion for a more definite statement.

13

14                                      **III.**

15                                 **CONCLUSION**

16

17          As clearly set forth in the complaint, North American alleges that Philpot and

18  his cohorts perpetuated the Illegal Commission Scheme, offered and paid secret

19  rebates, advanced premiums and other monetary incentives to complicit individuals

20  who posed as legitimate consumers and applied for Sham Policies, which were

21  intended to lapse once Philpot and his agents had unlawfully obtained the maximum

22  commissions possible. Over a period of years and over hundreds of fraudulent

23  insurance transactions, Philpot and his associates actively concealed their scheme and

24  deceived North American into believing that they were actually honoring their

25  contractual promises not to rebate their commissions in any way. These factual

26  allegations, assumed to be true for purposes of a 12(b)(6) motion, are more than

27  sufficient to state valid and cognizable causes of action that will entitle North

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

OPPOSITION TO DEFENDANT PHILPOT'S MOTION TO DISMISS