1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE, ) ) ) Plaintiff, ) v. ) ) MICHAEL L. PHILPOT, et al, ) ) Defendants. ) ) ) | Civil No.08cv270 BEN (NLS) **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO QUASH THIRD PARTY SUBPOENA** [Doc. No. 261] |

Plaintiff North American Company for Life and Health Insurance ("North American") brought suit against defendant Michael L. Philpot ("Philpot") and other agents of the Michael Philpot Agency (collectively, "Defendants").  The Michel Philpot Agency is a former general insurance agent for North American and sold North American's Custom Accumulator Universal Life Policies ("UL" policies).  North American claims that Defendants impermissibly rebated portions of their commissions to UL policyholders who bought their policies through the Michael Philpot Agency.

Of the 16 named Defendants, all except for Alex Almeida, Stan Perlman, Steve Rasky, Steve Costello and Robert Epstein have either settled out or been dismissed from the lawsuit.  One former Defendant, Evan Nelson, in an interview and subsequent deposition, named his mother-in-law, Olivia Tagle, as having participated in the alleged illegal commission scheme that North American details in its third amended complaint.  Upon learning this information, North American served a third-party subpoena on Tagle for her deposition and for certain documents.  Tagle moves to quash the subpoena. For the following reasons, the court **GRANTS in part** and **DENIES in part** Tagle's motion to quash.

08cv270

<u>**RELEVANT FACTS.**</u>

1.     <u>**The Nelson Interview.**</u>

North American interviewed Nelson on September 2, 2010, while he was still an active Defendant, regarding his selling of North American life insurance policies. Cooley Decl. ¶ 2. In the interview Nelson said Tagle introduced him to the practice of rebating premiums. *Id.* ¶ 3. North American and Nelson filed a joint motion to request the dismissal of Nelson on September 9, 2010. Dkt. No. 246. Nelson was dismissed without prejudice on September 13, 2010. Dkt. No. 247.

On September 16, 2010, based on the information learned in the Nelson interview, North American attempted to serve a subpoena on Tagle, requesting to take her deposition on October 1, 2010 and requesting a production of documents. Cooley Decl. ¶ 6. After Tagle avoided service for a week, North American hired a private investigator to survey her home so as to accomplish service. *Id.* ¶¶ 7-8. North American served her on September 28 with a noticed deposition date of October 6, 2010. *Id.* ¶ 9. Tagle told North American she could not attend an October 6 deposition. *Id.* ¶¶ 10-12. She said she could be available October 28, 29 or November 1, 2010. *Id.* ¶ 14. North American confirmed it would depose her on October 28, 2010. *Id.* On October 8, Tagle, through counsel, asked to move the deposition to November 1, 2010. On October 20, Tagle told North American she would move to quash the subpoena. *Id.* ¶ 16. After a few meet and confer efforts, Tagle filed the motion to quash on October 29, 2010, the last business day before the deposition. *Id.* ¶¶ 17-21.

On November 3, 2010, North American deposed Nelson, where he restated his interview testimony regarding Tagle. *Id.* ¶ 5; Ex. A. He testified that because Tagle could no longer sell life insurance due to North American "blacklisting" her, Tagle had Nelson sign life insurance applications, and used him and at least four others to submit life insurance applications that Tagle had procured. Cooley Decl. Ex. A ("Nelson Depo."), 7:23-8:13; 11:22-12:23; 14:15-15:1; 23:7-24:16. Nelson also testified that Tagle assured her that rebating is legal in California. *Id.* 7:11-22; 13:6-12. As part of their arrangement, Nelson would take 2% of the commissions from North American and turn over the remainder to Tagle. *Id.* 16:13-22; 26:17-27:4.

2.     <u>**The Subpoena to Tagle.**</u>

The subpoena asserts that Tagle "recruited, supervised and . . . acted at Michael J. Philpot's

2

1  direction in selling North American UL insurance policies and policies of other insurance companies

2  between 2004 and 2007."  Cooley Decl. Ex. B.  It also seeks documents including, but not limited to, all

3  documents relating the compensation Tagle received from North American since 2004 (RFP No. 9), the

4  compensation she received from the sale of North American life insurance policies since 2004 (RFP No.

5  10), North American's termination of Tagle (RFP No. 11), and to insurance coverage Tagle has had in

6  place since 2004 (RFP No. 12).

7      Tagle moves to quash the deposition subpoena and request for production of documents on the

8  grounds that they are overly broad and impose an undue burden on Tagle.  She also says that despite

9  meet and confer efforts, North American refused to limit the subpoena in any way, such as by limiting it

10 to activities Tagle engaged in after her termination or to her dealings with the remaining Defendants.

11 North American, however, says it did not receive a response to its offer to hold the document request in

12 abeyance if Tagle went forward with the deposition.  Cooley Decl. ¶ 20.

13                                          DISCUSSION

14     **1.**     **Legal Standard.**

15     Rule 45 sets forth the duties and obligations of parties issuing subpoenas and non-parties

16 responding to subpoenas.  "A party or attorney responsible for issuing and serving a subpoena must take

17 reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed.

18 R. Civ. Proc. 45(c)(1).  "On timely motion, the issuing court must quash or modify a subpoena that: . . .

19 (iv) subjects a person to undue burden."  Fed. R. Civ. Proc. 45(c)(3)(A).  Additionally, non-parties

20 deserve extra protection from the courts.  *High Tech Medical Instrumentation, Inc. v. New Image*

21 *Industries, Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995)(awarding sanctions against party who failed to

22 avoid burden to non-party), citing *U.S. v. C.B.S.*, 666 F.2d 364, 371-72 (9th Cir.1982).

23     **2.**     **Timeliness of the Motion.**

24     North American first argues the motion to quash is untimely because it was not granted before

25 the date set for compliance.  In support, it cites to a case from this district, *Anderson v. Abercrombie &*

26 *Fitch Stores*, Inc. 2007 U.S. Dist. LEXIS 47795, *25-*26 (S.D. Cal. 2007).  *Anderson*, however, did not

27 hold that a motion to quash a subpoena must be granted before the date of compliance.  Instead, it held

28 that a motion to quash is untimely if not *filed* before the compliance date.  North American also relies on

08cv270

1  a case that *Anderson* refers to, *King v. Fidelity Nat'l Bank of Baton Rouge*, 712 F.2d 188, 191 (5th Cir.

2  1983).  While *King* holds that a motion to quash must be granted before a deposition date to excuse

3  compliance with the subpoena, out of circuit authority relating to a different situation under a different

4  rule is not persuasive.

5      The court finds that because Tagle filed her motion to quash before the date noticed for

6  compliance with the subpoena, the motion is timely.

7      **3.    Undue Burden.**

8      Tagle argues that the subpoena imposes an undue burden on her because it seeks overbroad

9  information from a third party and is not reasonably calculated to lead to the discovery of admissible

10  evidence related to the claims asserted against the remaining parties in this litigation.  She argues that

11  the only conceivable purpose for deposing her is for North American to engage in a fishing expedition

12  to develop a new claim against another proposed Defendant.  North American argues that it is not

13  engaged in a fishing expedition, but rather, already possesses specific information to tie Tagle to the

14  allegations in the third amended complaint.

15     The Federal Rules allow for broad discovery in civil actions: "Parties may obtain discovery

16  regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant

17  information need not be admissible at trial if the discovery appears reasonably calculated to lead to the

18  discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  This provision is liberally construed to

19  provide wide-ranging discovery of information necessary for parties to evaluate and resolve their

20  dispute.  *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1995).  The party seeking to

21  compel discovery has the burden of establishing that its request satisfies the relevancy requirements of

22  Rule 26(b)(1).  *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995).  In turn, the party

23  opposing discovery has the burden of showing that discovery should not be allowed, and also has the

24  burden of clarifying, explaining and supporting its objections.  *DirectTV, Inc. V. Trone*, 209 F.R.D. 455,

25  458 (C.D. Cal. 2002); *Oakes*, 179 F.R.D. at 283.

26     In the comments to Rule 26(b)(1), the Advisory Committee attempts to further clarify the rule:

27  / / /

28  / / /

08cv270

> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. . . . A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. . . . For example, other incidents of the same type . . . could be properly discoverable if likely to yield or lead to the discovery of admissible information.
> ***
> [T]he court . . . has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.

Fed. R. Civ. Proc. 26(b)(1), Advisory Committee Notes, 2000 Amendments.

Here, while the subpoena is not limited to the issues presented against the remaining Defendants, it does seek information that relates to North American's claims regarding the alleged illegal commission scheme. For example, the information could shed light on Tagle's own practice of rebating commissions and premium financing and use of others so as to hide her own involvement. North American can also question Tagle on her work with any of the remaining Defendants.

The court finds that at least some of the information sought in the subpoena is relevant to the claims and defenses in this case. The court, therefore, denies the request to quash the entire subpoena, and sets the following limits as to the information sought in the subpoena: The subpoena shall be limited to information related to any of the remaining Defendants or to Evan Nelson that arose from 2004 on, and limited to activities Tagle engaged in after her termination. Information regarding Tagle's employment from 2004 until her termination, unless relevant to any of the remaining Defendants or to Nelson, is not relevant to any of the claims against the remaining Defendants, and in any event, would have been available to North American in discovery during the time that some of the other Defendants had been active in this litigation. The time for that discovery has come and passed.

**4.   Sanctions.**

North American asks for sanctions in the form of fees expended to defend against this motion. Because the court has granted in part the motion to quash, it will not award sanctions to North American for opposing this motion.

**IT IS SO ORDERED.**

DATED: November 24, 2010

Hon. Nita L. Stormes
U.S. Magistrate Judge

08cv270